**PEABODY COAL COMPANY, Appellant (Respondent Below),**

v.

**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellee (Petitioner Below).**

No. 77S01–9605–CV–315.

Supreme Court of Indiana.

May 10, 1996.

David R. Joest, Henderson, Kentucky, for Appellant.

Pamela Carter, Attorney General, Myra P. Spicker, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

In classic administrative law, the chief executive officer or the board of a government agency makes final decisions for the organization, based on the recommendations of subordinates and evidence presented to a hearing officer or an administrative law judge (ALJ). Aggrieved parties outside the agency may seek review of these final decisions in the courts.

This appeal presents a question decidedly outside that traditional framework: may the director of the Department of Natural Resources (DNR) seek judicial review of an

3. The amendment became effective in 1994. *Id.* Weaver was tried in 1990.

adverse decision by an ALJ in his own department? Peabody Coal Company contends the director may not go to the courts after losing before the ALJ. In the changing world of administrative law, we agree with the Court of Appeals that the director may do so.

### I. Facts and Procedural History

The facts are not in dispute. In July 1989, an authorized representative of DNR inspected Peabody's mining operation at its Hawthorne Mine in Sullivan County. This visit was part of DNR's responsibility for ensuring that surface mines in Indiana conform to the permit and performance standards set out in the Indiana Surface Mining Control and Reclamation Act ("Surface Mining Act")[1] and attendant regulations. The inspector found that surface water was escaping the permit area without passing through a siltation structure or basin and that the sediment was not being retained within the permit area. The inspector issued a notice of violation, declaring that Peabody was in violation of the Surface Mining Act, several regulations, and Peabody's operating permit.

Peabody requested review by an administrative law judge. On cross motions for summary judgment, the ALJ held for Peabody and vacated the notice of violation. DNR petitioned the Sullivan Circuit Court for judicial review of the ALJ's ruling pursuant to Ind.Code Ann. ch. 4–21.5–5–3 (West 1990).[2] The trial court held for DNR, reversing the ALJ. The Court of Appeals affirmed. *Peabody Coal Company v. Indiana Dep't. of Natural Resources*, 629 N.E.2d 925 (Ind.Ct.

App.1994). We have granted transfer to consider whether the director of DNR had standing to seek judicial review.[3]

### II. Typical Agency Structure

Although administrative bodies exist in a variety of forms depending on their mission and the political environment in which they were established, most share certain characteristics. They are typically structured as a hierarchy, with the highest tier consisting in a single officer or a multi-member board as the chief policy-maker. The director or commission acts as the agency's ultimate authority through rulemaking, adjudication (including activities such as licensing), or a combination of both.

Below this level, deputy or assistant directors aid the chief policy-makers in coordinating the agency's various responsibilities. These deputies also manage their own subdominions. This second tier of authority also commonly houses the agency's hearing officers or administrative law judges, whose task is to hear and decide cases brought by the deputies. Typically, judgments by ALJs or hearing officers are reviewed by the director or commission to ensure consistency with the agency's policy objectives. *See* 1 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 8.6 (1994).

Finally, most departments feature further operational subdivisions, each with its own managerial and functional structure. In a permitting agency such as DNR, the agency normally interacts with people or entities subject to its jurisdiction through inspectors and lower level officers employed in these

---

**1.** Ind.Code Ann. art. 13–4.1 (West 1990 & Supp. 1994).

**2.** Indiana Code § 13–4.1–13–1 provides for judicial review of "any action of the director or the commission" under Indiana Code ch. 4–21.5–5–3. Ind.Code Ann. § 13–4.1–13–1 (West 1990). Recodified at Ind.Code Ann. § 14–34–2–2, P.L. No. 1–1995, Sec. 27, 1995 Ind.Acts 682. Indiana Code ch. 4–21.5–5 "establishes the exclusive means for judicial review of an agency action," Ind.Code Ann. § 4–21.5–5–1 (West 1991), and review may be had only by persons who (1) have standing; (2) have exhausted their administrative remedies; (3) have timely pursued review, and (4) have met any other requirements established by law, Ind.Code Ann. § 4–21.5–5–2(b) (West

1991). Indiana Code § 4–21.5–5–3 is the focus in this case. That section provides:

> The following persons have standing to obtain judicial review of an agency action:
>  (1) A person to whom the agency action is specifically directed.
>  (2) A person who was a party to the agency proceedings that led to the agency action.
>  (3) A person eligible for standing under a law applicable to the agency action.
>  (4) A person otherwise aggrieved or adversely affected by the agency action.

Ind.Code Ann. § 4–21.5–5–3 (West 1990).

**3.** On the remaining allegations of error, we summarily affirm the rulings of the Court of Appeals. Ind.Appellate Rule 11(B)(3).

department subdivisions. These men and women make initial enforcement determinations for the agency.

### III. Indiana's Department of Natural Resources

Until recently, the structure of Indiana's DNR has differed little from this model. Before 1990, the Natural Resources Commission was the primary policy-maker for the agency, empowered with both the rule-making authority and ultimate responsibility for actions regarding permits.[4] The commission had the exclusive power to issue permits,[5] and the final word on their suspension or revocation.[6] The director of DNR, who was also a member of the commission, was responsible for the administration and enforcement of the act and the commission's regulations.[7] The director also had the final authority in matters concerning notices of violation and cessation orders.[8]

In 1990 and 1991, the legislature substantially revised this scheme.[9] The director became the prime mover for the agency. The commission retained exclusive rulemaking authority,[10] but the director acquired responsibility for issuing permits,[11] and for ensuring compliance with the performance standards.[12]

The Commission is the "ultimate authority" for the department for the purposes of hearings under the Administrative Orders and Procedures Act.[13] The commission also appoints administrative law judges.[14] The Surface Mining Act designates such ALJs as the "ultimate authority" for all proceedings other than issuing permits and the suspension or revocation of permits.[15]

### IV. ALJ as "Ultimate Authority"

■ Peabody Coal argues that inasmuch as the statute designates the ALJ as the "ultimate authority" of the department for the review of notices of violation, the department should not be allowed, through the director, to appeal the department's own decisions to the courts. Peabody Coal misconstrues the term "ultimate authority." The Surface Mining Act designates the ALJ as the "ultimate authority" of the department in certain cases and provides further that the ALJ's decisions are subject to judicial review under the AOPA.[16] The term "ultimate authority" defines the individual or body within an agency which issues final orders ripe for judicial review without intervening review by the director or the commission. Ind.Code Ann. § 4–21.5–3–27(a) (West 1990). Thus, the fact that an ALJ is the "ultimate authority" under the Surface Mining Act tells us only that the ALJ's decision is subject to judicial review. The question remains whether the director can properly petition for review.

4. Ind.Code Ann. § 13–4.1–2–1(a) (West 1990).

5. Ind.Code Ann. § 13–4.1–4–5 (West 1990).

6. Ind.Code Ann. § 13–4.1–11–6 (West 1990).

7. Ind.Code Ann. § 13–4.1–2–2 (West 1990).

8. Ind.Code Ann. § 13–4.1–11–8 (West 1990).

9. Pub.L. No. 28–1990, 1990 Acts 1075; Pub.L. No. 125–1991, 1991 Acts 2053.

10. Ind.Code Ann. § 13–4.1–2–1(a) (West Supp. 1994).

11. Ind.Code Ann. ch. 13–4.1–4–5 (West Supp. 1994).

12. Ind.Code Ann. chs. 13–4.1–8 and 13–4.1–11 (West Supp.1994).

13. Ind.Code Ann. § 14–3–3–21(a) (West Supp. 1994), recodified at Ind.Code Ann. § 14–10–2–3, P.L. No. 1–1995, Sec. 3.

14. Ind.Code Ann. § 14–3–3–3(e) (West Supp. 1994), recodified at Ind.Code Ann. § 14–10–2–2 (West Supp.1995).

15. Ind.Code Ann. § 13–4.1–2–1(c), recodified at Ind.Code Ann. § 14–34–2–2(b), P.L. No. 1–1995, Sec. 27. The Code provides:

> [T]he administrative law judge is the ultimate authority for the department for any administrative review proceeding under this article, except for proceedings, concerning the approval or disapproval of a permit application or permit renewal under IC 13–4.1–4–5 and proceedings for suspension or revocation of a permit under IC 13–4.1–11–6.

Ind.Code Ann. § 13–4.1–2–1(c).

16. Ind.Code Ann. § 13–4.1–2–1(c), (e) (West Supp.1994), recodified at Ind.Code Ann. § 14–34–2–2(d).

The AOPA authorizes petitions for judicial review of administrative orders by, *inter alia*, "a person who was a party to the agency proceedings that led to the agency action." Ind.Code Ann. § 4–21.5–5–3 (West 1990). "Person" is defined broadly: "'Person' means an individual, agency, political subdivision, partnership, corporation, association, or other entity of any character." Ind.Code Ann. § 4–21.5–1–11 (West 1990). We conclude that the director is "a person who was a party to the agency proceedings," entitling him to judicial review of the ALJ's ruling.

The substantive functions of the department comprise the jurisdiction of the director; the commission reviews the director's orders relating to permits and the ALJs adjudicate disputes arising from the director's other acts. Most important here, not even the commission has the power to review decisions of the ALJ regarding notices of violations.[17]

██ Under this new arrangement, when the commission reviews the director's decision to issue, suspend, or revoke a permit, the director sits on both sides of the question. He appears before the commission as an advocate and sits as a member of the commission resolving the matter. When the commission decides against the director, he simply has failed to convince his fellow commissioners that his view was correct. Judicial review therefore would not be appropriate. *Accord McTaggart v. Public Service Commission*, 168 Mont. 155, 541 P.2d 778 (1975) (holding that dissenting member of Public Service Commission could not challenge a final order by the commission).

By contrast, when the director issues a notice of violation and the respondent requests review by an ALJ, the director stands as an adversary to the alleged violator. In this situation, the director's role as an adverse party in the adjudication entitles him to petition for judicial review under the Surface Mining Act and AOPA.

To hold otherwise would prevent the chief political officers of the government, the Governor and his appointed director, from fully executing their statutory obligation to enforce the Surface Mining Act. The legislature has instructed the director to "conduct the necessary investigations and inspections for the proper administration of [the Surface Mining Act]" and to ensure that all surface mining operations in Indiana comply with the provisions of the Act and the commission's regulations. Ind.Code Ann. § 13–4.1–2–2 (West Supp.1994).[18]

If the director fails in his duties under the Surface Mining Act, it is the public at large that will bear the brunt of his failure. Protection of the environment is a public trust. The Surface Mining Act itself recites that its purpose is "to insure the protection of the public interest through effective control of surface coal mining operations."[19] If the director does not have standing to appeal adverse rulings by the ALJ, those decisions will escape judicial review altogether. If the ALJ finds for the department, the petitioner can certainly seek review. When the ALJ holds for a petitioner, however, only the di-

**17.** Ind.Code Ann. § 13–4.1–2–1(c) (West Supp. 1994).

The General Assembly's efforts in this instance to establish a neutral adjudicator outside of the political and policy-centered atmosphere of the agency is not unique to Indiana or to the country generally. In fact, in its last session, the legislature created an independent Office of Environmental Adjudication to review decisions by the Commissioner of the Department of Environmental Management. Pub.L. No. 41–1995, 1995 Ind.Acts 1181. In addition, many states · have been experimenting with creating single hearing agencies, separate and distinct from other agencies. These strictly adjudicatory bodies are staffed with independent and neutral administrative law judges who hear cases arising from the other state agencies. For a discussion of this innovation in administrative law, see Honorable John W. Hardwicke, "The Central Hearing Agency: Theory and Implementation in Maryland, 14 J.Nat'l Assoc. of Admin.L.Judges 5 (1994).

**18.** The director is, in short, the executive arm of the department, and as such he is to "exercise the full reach of state constitutional powers to insure the protection of the public interest" in the "environment and agricultural productivity" while also recognizing "the nation's need for coal as an essential source of energy." Ind.Code Ann. § 13–4.1–1–2 (West 1990).

The ALJ, by contrast, has no executive duties.

**19.** Ind.Code Ann. § 13–4.1–1–2(10) (West 1990), recodified at Ind.Code Ann. § 14–34–1–3(10) (West Supp.1995).

rector stands in a position to appeal the ruling.

For the foregoing reasons, we summarily affirm the opinion of the Court of Appeals. Ind.Appellate Rule 11(B)(3). The judgment of the trial court is affirmed.

DeBRULER, DICKSON, SULLIVAN and SELBY, JJ., concur.