**Carl Daniel PARTLOW, Appellant–Petitioner,**

v.

**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellee–Respondent.**

No. 49A04–9810–CV–527.

Court of Appeals of Indiana.

Sept. 30, 1999.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kathryn Janeway, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Carl Daniel Partlow appeals the trial court's judgment affirming the determina-

tion of the administrative law judge ("ALJ") and the Indiana Family and Social Services Administration ("FSSA") that Partlow is not eligible for placement in an Intermediate Care Facility for the Mentally Retarded or Developmentally Disabled ("ICF/MR"). The sole issue presented for our review is whether the determination that Partlow is ineligible for placement and, thus, for Medicaid funding, is unsupported by the evidence or contrary to law.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Partlow was born on March 22, 1962. He is diagnosed as having mild mental retardation and Klinefelter's Syndrome, a developmental disability which results in the individual having a tendency toward a dull mentality and behavioral problems. Partlow has resided at Richmond State Hospital since December of 1989, during which time he has been placed in two group homes in the community without success.

Partlow applied for Medicaid funding for placement in an ICF/MR and also for home and community-based waiver services. On November 8, 1996, the FSSA's Office of Medicaid Policy and Planning ("OMPP") denied Partlow's application for placement and also denied his request for waiver services.[1] Partlow appealed the OMPP denials. Following an evidentiary hearing, the ALJ issued her findings of fact and decision affirming the denials. Thereafter, the FSSA affirmed the ALJ's decision. Partlow filed his petition for judicial review on September 26, 1997. The trial court entered its findings of fact, conclusions of law and judgment denying Partlow's petition on September 29, 1998.

## DISCUSSION AND DECISION

### Standard of Review

■ Judicial review of administrative decisions is very limited. *City of India-*

napolis v. Woods, 703 N.E.2d 1087, 1090 (Ind.Ct.App.1998), *trans. denied.* Our review is constrained to a determination of whether the administrative agency lacked subject matter jurisdiction or employed improper procedures, or whether the decision was unsupported by substantial evidence or was arbitrary, capricious, or in violation of constitutional, statutory or legal principles. *Brennan v. Board of Zoning Appeals of Evansville and Vanderburgh County,* 695 N.E.2d 983, 985 (Ind. Ct.App.1998). The party attempting to upset the administrative order has the burden of proving that the agency's action was an abuse of discretion or arbitrary and capricious. *Indiana Dep't of Natural Resources v. United Minerals, Inc.,* 686 N.E.2d 851, 854 (Ind.Ct.App.1997), *trans. denied.*

■ Both this court and the trial court are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. *U.S. Outdoor Advertising Co. v. Indiana Dep't of Transp.,* 714 N.E.2d 1244, 1251 (Ind.Ct. App. 1999). We may vacate an agency decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the agency are clearly erroneous. *Id.*

■ An interpretation given statutes or administrative rules and regulations by an agency charged with the duty of enforcing those statutes, rules or regulations is entitled to great weight. *See Peabody Coal Co. v. Indiana Dep't of Natural Resources,* 629 N.E.2d 925, 928 (Ind.Ct.App. 1994), *aff'd,* 664 N.E.2d 1171 (1996). However, an agency's interpretation which is erroneous is entitled to no weight. *Id.* In construing a statute or administrative regulation, courts must begin with the language of the statute or regulation itself. *Id.* Words must be given their plain and

---

**1.** Partlow does not appeal the trial court's judgment affirming the FSSA's determination that he is not eligible for Home and Community–Based Waiver Services.

ordinary meaning and the statute or regulation must be construed as a whole looking to its object and policy. *Id.*

### Intermediate Care Facility for the Mentally Retarded

The FSSA denied Partlow placement in an ICF/MR.[2] Indiana has opted to provide Medicaid to patients who reside in facilities which qualify as ICF/MRs under 42 U.S.C. § 1396 (1999). IND.CODE §§ 12–15–2–8, 12–15–5–1(19). An ICF/MR is defined in relevant part as:

[A]n institution (or distinct part thereof) for the *mentally retarded or persons with related conditions* if—

(1) the primary purpose of such institution (or distinct part thereof) is to provide health or rehabilitative services for mentally retarded individuals and the institution meets such standards as may be prescribed by the Secretary;

(2) the mentally retarded individual with respect to whom a request is made under a plan approved under this subchapter is receiving *active treatment* under such program.

42 U.S.C. § 1396d(d) (emphases added). "Persons with related conditions" are defined as:

individuals who have a severe chronic disability that meets all of the following conditions:

(a) It is attributable to—

(1) Cerebral palsy or epilepsy; or

(2) Any other condition, other than mental illness, found to be closely related to mental retardation because this condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons, and re-

quires treatment services similar to those required for these persons.

(b) It is manifested before the person reaches age 22.

(c) It is likely to continue indefinitely.

(d) It results in substantial functional limitations in three or more of the following areas of major life activity:

(1) Self-care

(2) Understanding and use of language

(3) Learning

(4) Mobility

(5) Self-direction

(6) Capacity for independent living.

42 C.F.R. § 435.1009 (1999).[3] In addition to servicing the mentally retarded or "persons with related conditions," the ICF/MR must provide "active treatment" in order to receive federal financial participation, i.e., Medicaid reimbursement. *See* 42 C.F.R. § 435.1009. "Active treatment services" are defined by federal regulation as:

(1) Each client must receive a continuous active treatment program, which includes aggressive, consistent implementation of a program of specialized and generic training, treatment, health services and related services described in this subpart, that is directed toward—

(i) The acquisition of the behaviors necessary for the client to function with as much self determination and independence as possible; and

(ii) The prevention or deceleration of regression or loss of current optimal functional status.

(2) Active treatment does not include services to maintain generally independent clients who are able to function with little supervision or in the absence

---

**2.** We note that the ALJ decision refers to intermediate care facilities for the mentally retarded or developmentally disabled ("ICF MR/DD"). However, an intermediate care facility for the mentally retarded ("ICF/MR") referred to in federal and state statutes includes both the mentally retarded and "per-

sons with related conditions" such as the developmentally disabled. *See* footnote 3, *infra.*

**3.** As noted by Partlow, the definition of "persons with related conditions" is very similar to Indiana's definition of "developmental disability." *See* IND.CODE § 12–7–2–61.

of a continuous active treatment program.

42 C.F.R. § 483.440(a) (1999). "Clients who are admitted by the facility must be in need of and receiving active treatment services." 42 C.F.R. § 483.440(b)(1); *see* 404 IND. ADMIN. CODE tit. 405, r. 1–1–11(1999) (condition of admission to ICF/MR is determination of the need for such care).

■ Based upon the relevant statute and regulations, Partlow contends that in order to be eligible for placement in an ICF/MR an individual must simply be mentally retarded or have a related condition. Accordingly, because it is undisputed that he is mentally retarded, Partlow contends that the determination that he is not eligible for placement in an ICF/MR is contrary to law. The State counters that regardless of whether the individual is mentally retarded or has a related condition, eligibility is conditioned upon that individual's need for active treatment in an ICF/MR. We agree with the State.

We construe the plain language of 42 U.S.C. 1396d(d) as requiring that a patient in an ICF/MR be either (1) a mentally retarded person receiving active treatment, or (2) a person with a related condition receiving active treatment. The logical implication of requiring that an ICF/MR provide active treatment services is that the persons placed in the facility be in need of such services. Consequently, aside from the type of diagnosed disability from which the individual suffers, the core issue in determining eligibility for ICF/MR placement is whether the individual is in need of active treatment. As the Seventh Circuit Court of Appeals has stated, "ICF/MRs provide 24–hour care, rehabilitative services, and supervision to individuals who are mentally retarded or have

related conditions, *require an institutional-type setting, and are receiving active treatment."* Lett v. Magnant, 965 F.2d 251, 253 (7th Cir.1992).

Partlow asserts that, although the plain language of the statute and federal regulations requires that a facility that wishes to qualify as an ICF/MR provide active treatment to its patients, there is no requirement that a determination be made that the patients are actually in need of active treatment because the law presumes that mentally retarded persons or those with related conditions are in need of active treatment. We wholly disagree with Partlow's interpretation. There are varying degrees of mental retardation and, similarly, those with related conditions have differing functional limitations. As specified by regulation, some mentally retarded individuals or persons with related conditions may be generally independent and able to function in the absence of an aggressive and continuous active treatment program. 42 C.F.R. § 483.440(a). The clear object of the statute and the regulations is to provide federally funded services to those who need them. As noted by Partlow, the significance of being found eligible for ICF/MR placement is that Medicaid will pay for the services. Brief of Appellant at 4. Because not all mentally retarded individuals or persons with related conditions are in need of aggressive and continuous active treatment in an institutional type setting, not all of those disabled individuals are entitled to receive federally funded services. Having determined the law, we now turn to the facts.

■ Both the ALJ and the trial court found that Partlow was not in need of active treatment and, thus, not eligible for ICF/MR placement.[4] We agree with the

---

4. We disagree with Partlow's contention that his "need for active treatment is not relevant given that the administrative law judge did not rely on this when making her decision." Brief of Appellant at 15. Specifically, Partlow argues that this court cannot consider Partlow's need for active treatment because

the ALJ did not state that he was ineligible for ICF/MR placement for that reason but rather concluded that he was ineligible for other reasons. First, we note that both the ALJ and the trial judge made numerous findings and conclusions on the issue of active treatment, and we presume that they also relied on those

State that substantial evidence supports that finding.[5] Evidence will be considered substantial if it is more than a scintilla and less than a preponderance. *Crooked Creek Conservation and Gun Club, Inc. v. Hamilton County North Bd. of Zoning Appeals*, 677 N.E.2d 544, 549 (Ind.Ct.App. 1997), *trans. denied.* That is to say, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

The evidence here indicates that Partlow's thinking, although a little slow, is organized and sequential, and that he can follow multiple directions. Patricia Lahr, a social worker from Richmond State Hospital where Partlow currently resides, testified that Partlow is independent in area care, laundry tasks, simple meal preparation, shopping, and management of limited funds. Lahr also testified that Partlow is independent in hygiene and grooming, although he could benefit from improvement in both areas. Partlow reads at a sixth grade level and can get around independently on public transportation. Partlow has adequately developed fine and gross motor skills, can engage in conversation, answer questions and offer his opinions.

Despite this evidence of his general independence, Partlow points to contrary evidence in the record including testimony that he occasionally needs "prompts" to "make sure he gets things done in a suitable fashion." Record at 87. Partlow maintains "[t]here is nothing in the definition of 'active treatment' which precludes a system of prompts as being part of an active treatment regimen." Brief of Appellant at 16. However, we must agree with the ALJ that the converse is also true. That is to say, there is nothing in the definition of active treatment which indicates that the need for prompts is equal to the need for active treatment. Record at 191. Partlow merely asks that we reweigh the evidence in his favor, a task not within our prerogative on appeal from an administrative decision. There is substantial evidence to support the finding that Partlow is not in need of active treatment.

The FSSA is charged with making ICF/MR eligibility determinations and, because substantial evidence supports its determination that Partlow is not in need of active treatment, we will defer to the FSSA's denial of ICF/MR placement. Partlow has not met his burden to show that the FSSA's denial is unsupported by substantial evidence or contrary to law.

Affirmed.

STATON, J., and RUCKER, J., concur.

---

findings in reaching their ultimate decisions. Moreover, as we have stated, the relevant statute and regulations provide that a patient's need for active treatment is a core requirement in ICF/MR placement eligibility and, thus, we must determine that issue as a matter of law and are not bound by the theories espoused by the ALJ or the trial court. As long as the ultimate decision is supported by substantial evidence, is not arbitrary, capricious or in violation of statutory principles, we must affirm.

5. Because the need for active treatment is a requirement whether the applicant is mentally retarded or a person with a related condition, and because the evidence supports the finding that Partlow does not need active treatment, we do not address whether Partlow, in addition to being mentally retarded, qualifies as a person with a related condition.