James and Shannon LAZZELL, in their own capacities and as representatives of their minor daughter, C. L., Appellants–Petitioners,

v.

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION; Katherine Humphreys, in her capacity as Former Secretary of Indiana FSSA; and John Hamilton, in his official capacity as Secretary of Indiana FSSA, Appellees–Respondents.

No. 03A01–0202–CV–74.

Court of Appeals of Indiana.

Sept. 24, 2002.

Keith Guthrie, Elizabethtown, IN, Attorney for Appellants.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

SULLIVAN, Judge.

Appellants, James and Shannon Lazzell, challenge the decision of the review court upholding the decision of the Indiana Family and Social Services Administration ("FSSA") affirming the determination of the Administrative Law Judge ("ALJ") which denied the Lazzells' application for Medicaid benefits. Upon appeal, the Lazzells present three issues, which we restate as:

I.   Whether the FSSA erred in calculating Mr. Lazzell's income for purposes of determining Medicaid eligibility;

II.  Whether the FSSA erred in using Mr. Lazzell's 1999 income tax return to determine his family's Medicaid eligibility; and

III. Whether the Lazzells should recover attorney fees.

We affirm in part, reverse in part, and remand.

The record reveals that on June 19, 2000, while Mrs. Lazzell was pregnant with C.L., she applied in Indianapolis for Medicaid benefits for her and her son, B.L. Because the Lazzells reside in Bartholomew County, these applications were forwarded to the Bartholomew County Office of Family and Children ("OFC"). Mr. Lazzell is self-employed. Therefore, to establish his income levels, Mr. Lazzell provided the OFC with a profit and loss statement covering the first five months of 2000. Based upon this information, the Lazzells' son B.L. was approved for benefits. Mrs. Lazzell's application was denied because she failed to provide proof of her pregnancy.

On August 16, 2000, following the birth of her daughter, C.L., Mrs. Lazzell again applied for Medicaid benefits, this time with the appropriate proof of her pregnancy. Per the request of the caseworker, Mr. Lazzell provided the OFC with his 1999 income tax return and a profit and loss statement. The OFC used the information on Schedule C from Mr. Lazzell's 1999 income tax return to determine Medicaid eligibility. The OFC did not allow some of the expenses allowed by the IRS and, on September 22, 2000, determined that Mrs. Lazzell and her daughter did not qualify for benefits. The Lazzells requested administrative review, and a hearing was held before the ALJ on October 30, 2000. The ALJ issued findings of fact and conclusions of law which upheld the denial of benefits. The Lazzells then appealed the ALJ's decision to the FSSA, and, on January 16, 2001, the FSSA issued a notice of final agency action affirming the ALJ's decision.

On February 16, 2001, the Lazzells filed a verified petition for judicial review of the FSSA's action. *See* Ind.Code § 4–21.5–5–

7 (Burns Code Ed. Repl.1996). Along with the administrative record, both parties filed briefs with the review court. On November 1, 2001, the review court held a hearing upon the Lazzells' petition and took the matter under advisement. On November 19, 2001, the Lazzells, without leave of the review court, filed Count II alleging that the FSSA had violated the Lazzells' civil rights and requesting attorney fees. On January 24, 2002, the review court issued findings of fact and conclusions of law affirming the FSSA's denial of the Lazzells' application for Medicaid benefits.

■■■ Judicial review of administrative decisions is limited. *Partlow v. Indiana Family and Social Services Admin.*, 717 N.E.2d 1212, 1214 (Ind.Ct.App.1999). In our review of the FSSA's denial of benefits, we do so as did the review court. *Sanders v. State Family and Social Services Admin.*, 696 N.E.2d 69, 70 (Ind.Ct. App.1998). We look to see if the FSSA's denial of benefits was arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. *Id.* at 71. Both this court and the review court are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. *Partlow*, 717 N.E.2d at 1214. The party attempting to upset the administrative order has the burden of proving that the agency's action was erroneous. *Id.*

### I

### Calculation of Income

■■■ The Lazzells first claim that the FSSA failed to use the proper method to calculate their income for purposes of Medicaid eligibility. The FSSA counters that they properly followed 470 I.A.C. § 10.1–3–4, the administrative rule set forth to calculate income to determine eligibility for the Temporary Aid to Needy Families program ("TANF"), formerly known as Aid to Families with Dependent Children ("AFDC"). The Lazzells claim instead that 405 I.A.C. § 2–3–3 sets forth the proper method of calculating their income to determine financial eligibility. This section reads in pertinent part:

"Determination of net earned income as follows:

(A) All of the earned income of a child under fourteen (14) years of age is excluded.

(B) Up to ten dollars ($10) of earned income is disregarded if the income is received only once during the calendar quarter from a single source (infrequent) or could not be reasonably to expected (irregular) [sic]. If the total amount of infrequent or irregular earned income received in a month exceeds ten dollars ($10), this disregard cannot be applied.

(C) *Expenses allowed by the Internal Revenue Service shall be deducted from gross income from self-employment to determine net self-employment earnings.*

(D) Sixty-five dollars ($65) of earned income per month plus one-half (1/2) of remaining earned income is excluded." 405 I.A.C. § 2–3–3(1) (emphasis supplied).

The Lazzells argue that, if all expenses allowed by the IRS had been deducted from their gross income, they would have qualified for Medicaid benefits. The FSSA counters that this rule applies only to applicants applying for assistance under the Medicaid program for the aged, blind, and disabled.

The title of 405 I.A.C. Article 2, Rule 3 is "Eligibility Requirements Based on Need; Aged, Blind, and Disabled Program." The Lazzells claim that Rule 3 covers eligibility requirements for applicants to both the aged, blind, and disabled

program and the pregnant women and children program. In support of their argument, the Lazzells note that Rule 3 was re-codified in 1992. They note that, prior to this, the rule was codified as 470 I.A.C. 9.1–3, where it was captioned "Eligibility Requirements Based on Need," and made no mention of the Aged, Blind, and Disabled program.[1] The Lazzells propose that the caption was "revised to make clear that it applies not just to need-based applications, but to applications based on age, blindness, and disability as well." Appellant's Reply Brief at 4.

We note, however, that the rule following Rule 3, 405 I.A.C. 2–3.1 was titled "Eligibility Requirements Based on Need; Pregnancy Related Coverage; Coverage for Children 18 Years of Age and Under." The existence of this rule would suggest that Rule 3 was meant to cover eligibility requirements based on need for purposes of the aged, blind, and disabled program, and Rule 3.1 was meant to cover eligibility requirements based on need for purposes of the program for pregnant women and children—precisely what the Lazzells applied for. Rule 3.1, however, was voided by the General Assembly in 1997. *See* Acts 1997, P.L. No. 119, § 6. In fact, Rule 3.1 was voided before it was included in the version of the Indiana Administrative Code published by the Indiana Legislative Council. The 1996 edition and 1997 supplement of the Administrative Code contain no Rule 3.1, and the 1998 supplement lists Rule 3.1, but indicates that it has been voided and contains none of the provisions of the Rule. Thus, it appears that the FSSA attempted to promulgate a rule to determine eligibility based upon need for the Medicaid program covering pregnant women and children, but that this rule was quickly voided by the legislature.

This presents a regulatory gap. The rule which might have addressed the very question before us has been voided, leaving Rule 3, which appears to address eligibility requirements for the aged, blind, and disabled program. Whether for this reason or not, the FSSA claims that, to determine eligibility for the Medicaid program for pregnant women and children, it uses the methodology set forth in 470 I.A.C. § 10.1–3–4(b)(2) to calculate income for purposes of determining AFDC/TANF eligibility.[2] The FSSA cites no authority for its position. Instead, it simply asserts, "Indiana applies the AFDC income methodology to calculate applicants' incomes for the purpose of arriving at an amount to compare to the [Medicaid] program income standards." Appellee's Brief at 1. The Lazzells claim that the AFDC program is "a cash assistance program that is completely separate from the Medicaid program." Appellant's Brief at 8. This is not entirely accurate.

---

**1.** We note that it was actually not until the 1994 supplement to the Indiana Administrative Code that Rule 3 was titled "Eligibility Requirements Based on Need; Aged, Blind, and Disabled Program."

**2.** 470 I.A.C. § 10.1–3–4(b)(2) reads:
"The determination of net earned income of self-employed individuals shall be made based upon the greater of the following:
(A) Deduct forty percent (40%) of the gross income, which will be defined as the break-even point and considered as the cost of doing business, plus disregards, as specified in subdivision (1).

(B) Deduct actual expenses as allowed in 45 CFR 233.20 if the individual provides proof of such expenses, plus disregards, as specified in subdivision (1)."
45 CFR 233.20 in turn states that items such as depreciation, personal business and entertainment expenses, personal transportation, purchase of capital equipment, and payments on the principal of loans for capital assets or durable goods are not business expenses. The FSSA bases its decision to not allow many of the expenses listed in Mr. Lazzell's 1999 Schedule C upon these regulations.

"Title XIX of the Social Security Act ('SSA'), popularly called 'Medicaid,' was enacted by the Social Security Amendments of 1965, Pub.L. No. 89–97." *Sullivan v. Day*, 681 N.E.2d 713, 715 (Ind. 1997). States which elect to participate in the Medicaid program and receive federal funds must make Medicaid available to all persons who are "categorically needy." *Id.* Whether a person is "categorically needy" is determined by reference to eligibility for certain other programs. *Id.* States were permitted, but not required, to offer Medicaid to the "medically needy," defined as individuals whose income or resources were too great to qualify for categorically needy assistance but were unable to pay for necessary medical expenses. *Roloff v. Sullivan*, 975 F.2d 333, 335 (7th Cir.1992). Indiana has obligated itself to serve only the categorically needy, i.e., those families with dependent children eligible for public assistance under the AFDC program, and the aged, blind, and disabled who are eligible for benefits under the Aged, Blind, and Disabled program. *Roloff*, 975 F.2d at 335; *Sanders*, 696 N.E.2d at 71.

Here, the Lazzells were not applying for Medicaid benefits under the Aged, Blind, or Disabled program. Therefore, if Indiana provides Medicaid benefits only to the categorically needy, and the categorically needy are defined as families with dependent children eligible for public assistance under the AFDC program, then we cannot say that the FSSA acted arbitrarily or capriciously or abused its discretion in applying the AFDC income calculation methodology to determine the Lazzells' eligibility for Medicaid benefits. The Lazzells have failed to carry their

burden of proving that the agency's action was erroneous in applying 470 I.A.C. § 10.1–3–4(b)(2) and 45 C.F.R. 233.20, and not taking into consideration all of the expenses allowed by the IRS in determining Medicaid eligibility.[3]

The Lazzells also claim that the FSSA erroneously failed to exclude $625.89 in interest which they claim was inadvertently omitted from their 1999 Schedule C. The Lazzells claim that the "FSSA did not defend this disallowance before the trial court." Appellant's Brief at 8 n. 2. This is somewhat misleading. In the FSSA's brief in opposition to the Lazzells' petition for judicial review, the FSSA argued that this was at most harmless error in that, even if this expense had been allowed, Mrs. Lazzell and her new child would still be ineligible for benefits.

Be that as it may, the Lazzells do not explain why this expense should have been taken into consideration by the FSSA. To the extent they claim that this was allowable under 405 I.A.C. § 2–3–3(1)(C), we have concluded that the Lazzells have not met their burden of demonstrating that the FSSA was required to apply this rule instead of 470 I.A.C. § 10.1–3–4(b)(2). To the extent they argue otherwise, they have failed to make any cognizable argument. *See* Ind. Appellate Rule 46(A)(8)(a).

## II

### *Use of Prior Year's Financial Data*

The Lazzells claim that it was improper for the FSSA to use Mr. Lazzell's 1999 income tax return to determine their eligibility for Medicaid benefits. The ICES Program Policy manual[4] used by the FSSA states that:

---

3. This includes the $5,487 in depreciation which the Lazzells claim in their reply brief was erroneously not excluded. *See* 45 C.F.R. § 233.20 (items such as depreciation are not business expenses with respect to self-employment in calculating AFDC eligibility).

4. Neither the briefs, nor the appendix, nor the transcript enlighten us as to what the "ICES Program" is.

"Financial eligibility is based on the best estimate of income and circumstances which will exist in the month for which the assistance is being considered. This estimate should be founded upon the most complete information available to the Local Office as of the authorization date. This eligibility determination requires knowledge of an individual's and/or [assistance group]'s current, past or anticipated future circumstances. A *presumption* that current or historical trends will continue cannot be made. Use of historical trends is appropriate if there is reason to believe, with supporting documentation, that the trends will continue." Appendix at 43.

The manual further states:

"The net profit from self-employment income may be determined through a review of past books or records of the previous year's Federal Income Tax Report. The method of determining the net profit is to be documented in the case record. . . .

\* \* \*

*Current income from self-employment may be determined by using the individual's tax return filed for the previous year if a review of his current business records indicates no substantial variance.* If the previous year's tax return is not an accurate reflection of current income, his recent records are to be used to project the annual income." *Id.* at 44 (italics supplied).

Clearly, the policy manual provides that, as the "Local Office," the FSSA may use a prior year's tax return to estimate current monthly income if the applicant's business records indicate no substantial variance.[5]

In the present case, the first time the Lazzells applied for Medicaid benefits, the FSSA used Mr. Lazzell's profit and loss statement for the first five months of the year 2000 to determine that he had a net monthly income low enough to qualify their son B.L. for benefits. However, when the Lazzells reapplied for benefits, the FSSA used Schedule C from Mr. Lazzell's 1999 return to conclude that Mr. Lazzell had a net monthly income of $3,380.[6] Based upon this calculation, the FSSA determined that the Lazzells were ineligible to receive benefits.[7]

Upon appeal, the Lazzells challenge the FSSA's determination that there was no substantial variance between the income from the 2000 profit and loss statement and the 1999 income tax return. The FSSA maintains that its determination to use the 1999 data is entirely within its discretion because the gross monthly income as determined from the 2000 profit and loss statement was $5,520 and the gross monthly income as determined from the 1999 tax return was $5,820, a difference of $300.

■■■ The Lazzells claim that the FSSA's methodology is flawed in that it compares gross incomes, whereas relevant Medicaid eligibility requirements are not based upon

---

**5.** The Lazzells do not claim that this policy is itself invalid. Nevertheless, we note that the logic underlying this policy is not entirely clear. For this policy to be useful, the FSSA must determine current monthly income with enough accuracy to conclude whether there has been a substantial variance between current income and income from the prior year. Therefore, one might wonder why the FSSA would use the data from the prior year when

a relatively accurate figure of current income has already been determined.

**6.** Of course, as noted above, the FSSA came to this determination by using a method of calculating income which the Lazzells contend was incorrect.

**7.** The Lazzells make no claim that the income limits for Medicaid eligibility used by FSSA are incorrect.

gross income. Under either method proposed by the parties to calculate income for Medicaid eligibility, eligibility is not based upon gross income. *See* 405 I.A.C. § 2–3–3 (setting forth a procedure for determining *net* earned income for self-employed individuals); 470 I.A.C. § 10.1–3–4(b)(2) (setting forth a procedure for determining *net* earned income). Therefore, the FSSA's use of gross income to determine whether there is a substantial variance between two years' income, when Medicaid eligibility is based upon net earned income, seems improper. Let us assume that as an example, during the year prior to application, an applicant had a gross monthly income of $3,000 and a net monthly income of $2,500. Let us further assume during the year of the application this applicant still has a gross monthly income of $3,000, but now has a net monthly income of only $1,000. Using the net income from the current year, the applicant would qualify for benefits, but, using the net income from the prior year, the applicant would not qualify. Despite this, the FSSA would have us hold that it is entirely within its discretion to compare the gross incomes from both years and conclude that there is no substantial difference between the two, and then use the prior year's net earned income to determine eligibility. This strikes us as arbitrary and capricious. Therefore, as the FSSA cites no authority requiring it to consider gross income in making this determination, we hold that the FSSA erred in comparing gross income in determining whether there was a substantial variance between Mr. Lazzell's income as listed in his business records and his income as listed in the 1999 Schedule C.

Upon appeal, the FSSA also claims that it used the data from the 1999 tax return instead of the 2000 profit and loss statement because the tax return was subject to audit, and therefore more reliable. The FSSA cites section 3410.15.00 of the ICES Program Policy Manual, which states that either 40% of the gross income or actual *verified* expenses directly related to the production of income may be deducted from gross income when determining Medicaid eligibility for pregnant women and children. However, the FSSA does not cite, nor does our review of the record reveal, where the FSSA attacked the veracity of the profit and loss statement at the hearing before the ALJ.[8] Generally, a party may not advance a new argument for the first time upon appeal. *See Franklin Bank and Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind.1990); *Carmichael v. Siegel*, 754 N.E.2d 619, 634 (Ind.Ct.App. 2001); *DenniStarr Envtl., Inc. v. Indiana Dep't of Envtl. Mgmt.*, 741 N.E.2d 1284, 1289 (Ind.Ct.App.2001), *trans. denied.*

Moreover, we find the FSSA's argument somewhat curious. The FSSA claims that it used the 1999 tax return because there was no substantial variance between the gross monthly income as determined from that document and gross monthly income as determined from the 2000 profit and loss statement. Yet at the same time, the FSSA attacks the credibility of the very document upon which it relied to make this determination. Be that as it may, the policy manual states that current income from self-employment may be determined by using the previous year's income tax return "if a review of his business records indicates no substantial variance." Appendix at 44. Because we have determined that the FSSA acted arbitrarily and capriciously in making this decision, we must reverse the decision of the FSSA in this

---

8. When introducing Mr. Lazzell's profit and loss statement into evidence before the ALJ, the OFC caseworker stated that the reason she requested the 1999 Schedule C was, oddly enough, that she needed more "updated" information. Appendix at 111.

respect. If the FSSA wishes to use the information found on the 1999 tax return, it should first determine whether there is a substantial variance between the net income as determined from this document and the net income from "current business records." [9] *Id.* at 44.

## III

### *Attorney Fees*

██ The Lazzells claim that the FSSA's actions in denying them Medicaid benefits violated their civil rights, and therefore, they are entitled to recover attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988. Section 1988(b) allows recovery of attorney fees to the prevailing party in an action brought under Section 1983. The Lazzells, however, never filed a civil rights action against the FSSA at the review court and, therefore, have not prevailed in a Section 1983 action. On November 19, 2001, they filed an additional count with the review court, claiming a deprivation of civil rights. This, however, was after the FSSA had responded to the Lazzells' petition for judicial review, and the review court never granted the Lazzells' leave to amend their petition. *See* Ind. Trial Rule 15 (requiring leave of the trial court to amend pleadings after responsive pleading has been served). As the Lazzells are not the prevailing party in an action brought under Section 1983, they cannot now claim attorney fees based upon Section 1988, nor may they bring a new cause of action for the first time upon appeal. Therefore, the Lazzells may not recover attorney fees upon appeal based upon Sections 1983 and 1988.

### *Conclusion*

The FSSA's decision to apply AFDC rules to calculate the Lazzells' income for purposes of determining Medicaid eligibility was not improper. However, the FSSA did act arbitrarily and capriciously in comparing gross income to determine whether there was no substantial variance between Mr. Lazzell's income as listed in his year 2000 business records and his income as listed on his 1999 Schedule C, justifying a use of his 1999 income data to determine Medicaid eligibility. Finally, the Lazzells may not now upon appeal initiate a new cause of action alleging deprivation of civil rights and seeking to recover attorney fees.

The decision of the FSSA is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this decision.[10]

BAKER, J., and DARDEN, J., concur.

---

**9.** The FSSA claims in a footnote that, even if the income on the profit and loss statement were to have been used, the Lazzells would have still been ineligible to receive Medicaid. The FSSA bases this argument "by applying the 40 percent deduction" listed in 470 I.A.C. § 10.1–3–4(b)(2)(A). However, as noted by the ALJ, "The parties agree the actual expenses are more than 40% of the gross income." Appendix at 21. Therefore, we are unable to determine whether the Lazzells would be eligible or not. This is the task of the FSSA upon remand.

**10.** Whether the medical providers have or have not been paid for the care and services rendered during the period in question or whether the Lazzells may be claiming reimbursement entitlement is not an issue before us at this time.