**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellant–Respondent,**

v.

**UNITED MINERALS, INC., Appellee–Petitioner.**

No. 87A01–9702–CV–49.

Court of Appeals of Indiana.

July 28, 1997.

Transfer Denied Feb. 18, 1998.

Jeffrey A. Modisett, Attorney General, Myra P. Spicker, Deputy Attorney General, Indianapolis, for Appellant–Respondent.

John A. Hargis, Wagoner, Ayer & Hargis, Rockport, for Appellee–Petitioner.

## OPINION

ROBERTSON, Judge.

The Indiana Department of Natural Resources [DNR] appeals the trial court's grant of relief upon the application for judicial review filed by United Minerals, Inc. [Miner] from a determination made by an Administrative Law Judge [ALJ] of the Natural Resources Commission. The ALJ had upheld the DNR's order requiring Miner to revise its mining permit, which had been issued in 1990, to comply with regulations which had become effective in 1992. The trial court found that the determination of the ALJ was contrary to law because it constituted an impermissible, retroactive application of the 1992 regulations. We hold the ALJ's determination was correct and therefore reverse.

## FACTS

The operative facts are undisputed. Miner operates a coal strip mine known as the Deer Ridge Mine in Warrick County, Indiana, pursuant to a permit issued by the DNR in 1990. Miner's permit was effective for five years. Strip-mining regulations provide for a mid-term review of permits to ensure compliance with applicable regulations, including those related to reclamation of the land after mining operations have ceased. 30 CFR § 774.11(a); 310 IAC 12–3–120(a). As will be discussed in more detail below, new regulations regarding the standards to be applied in determining whether the land has been successfully reclaimed after the cessation of mining activities became effective in 1992, after the Miner's permit had been approved in 1990, but before the date of the required mid-term review of the permit.

On February 16, 1993, the DNR issued an order requiring Miner to revise its permit to comply with the new 1992 regulations pursuant to the mid-term review process. As noted above, Miner invoked the administrative review process and obtained a hearing before an ALJ which affirmed the DNR's order. Miner then sought judicial review in the trial court which reversed the ALJ. This appeal ensued. Additional facts are supplied as necessary.

## DECISION

As stated in *Peabody Coal Co. v. Indiana Department of Natural Resources*, 629 N.E.2d 925 (Ind.Ct.App.1994), *summarily affirmed*, 664 N.E.2d 1171:

This case is:

governed by the [Indiana Administrative Orders and Procedures Act, the AOPA], IND.CODE 4–21.5–3–1 et seq. The function of the trial court on the judicial review of administrative determinations is limited to a determination of whether the agency possessed jurisdiction over the matter and whether the order was made in accordance with the proper legal procedure, was based upon substantial evidence, and did not violate any constitutional, statutory, or legal principle. The scope of judicial review of administrative determinations is limited to the consideration of whether there was substantial evidence to support the finding or order of the administrative body and whether or not the action constitutes an abuse of discretion or is arbitrary and capricious as revealed by uncontradicted facts. The burden of proving an administrative action was an abuse of discretion or arbitrary and capricious falls upon the party attempting to upset the administrative order. The Court of Appeals will not substitute its opinion for that of an agency concerning matters within the scope of that agency's discretion and authority.

Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. However, we need not accord the same degree of deference to an agency's conclusion on a question of law. Law is the province of the judiciary. Our constitutional system empowers the courts to draw legal conclusions and accordingly the court in its function of judicial review of an administrative action may set aside an agency determination that is not in accordance with law.

An interpretation given a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight; however, an agency's interpretation of a statute which is incorrect is entitled to no weight. While evidence before an administrative agency will not be reweighed by the reviewing court, where the agency's finding is contrary to law, it shall be reversed. If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action and the trial court is required to reverse the agency's action as being arbitrary and capricious.

\* \* \* \* \* \*

Generally, the rules which apply to the construction of statutes also apply to the construction of administrative rules and regulations. In construing an administrative regulation, the court must begin with the language of the regulation itself. Words in an administrative regulation are to be given their plain and ordinary meaning. In interpreting a regulation, the court must not be guided by a single sentence or a part of a sentence; the court must look to the regulation as a whole and to its object and policy. An interpretation by an administrative agency charged with the duty of enforcing the applicable statutes and regulations is entitled to great weight; however an agency's interpretation which is erroneous is entitled to no weight.

[We have noted]:

In 1977, after previous attempts in 1973 and 1975, Congress passed, and the President signed, the Surface Mining Control and Reclamation Act (SMCRA) [30 U.S.C. § 1201 et seq.]. SMCRA is designed to provide a uniform nationwide program for the reclamation of land affected by surface coal mining operations. Uniformity is to be achieved, however, not through direct United States Department of the Interior control of surface mining across the nation, but rather through Interior Department oversight authority over state programs which must be at least as stringent as the federal program. If a state fails to develop a program, or fails to develop an acceptable program after the Secretary of the Interior has rejected a proposed program, the state will not obtain permanent regulatory authority, and a fed-

eral plan will be imposed. Once a state has obtained permanent regulatory authority, it must labor diligently to enforce its approved program vigorously, or the Interior Department will take over enforcement duties.

\*      \*      \*      \*      \*      \*

[Indiana's act, the ISMCRA] is largely a copy of the SMCRA.... In enacting the [ISMCRA], our General Assembly made clear its unequivocal intent to avoid federal control of Indiana surface coal mining and land reclamation. Indeed, the first purpose of the [ISMCRA] is to implement and enforce SMCRA. Therefore, because our first goal in construing a statute is to give effect to the intent of the legislature ... we will look to SMCRA and the federal rules adopted under it as we analyze the [ISMCRA].

With regard to the SMCRA and the regulations promulgated by the Secretary of the Interior under the SMCRA, the state laws and regulations must be no less stringent than, meet the minimum requirements of, include all applicable provisions of, and be no less effective than the SMCRA.

629 N.E.2d at 928, 930 (Citations omitted).

## I

### Retroactive Application

■ Whether a statute or regulation is to be applied retroactively depends upon the legislature's intent. *Chesnut v. Roof*, 665 N.E.2d 7, 9 (Ind.Ct.App.1996). Absent an express indication otherwise, we presume that the legislature intended that the new statutes or amendments be applied prospectively only. *Id.* To ascertain legislative intent, we look at the act as a whole and consider each section with reference to all other sections. *Id.* at 10. We presume that the legislature would not intend an unreasonable or absurd result. *Id.* Also, statutory amendments which impair existing rights cannot be applied retroactively. *Id.*

■ Although the use of a permit, once granted by the state, may constitute a property right within the meaning of the Due Process clause, the state nevertheless retains the power to revoke or modify the terms of a permit in the interest of the public welfare. *Lake County Beverage Company, Inc. v. 21st Amendment, Inc.*, 441 N.E.2d 1008, 1011 (Ind.Ct.App.1982), *particular statutory construction held to be erroneous, Ridenour v. Furness*, 514 N.E.2d 273, 275 (Ind.1987). Under ISMCRA, the DNR has the authority to require a strip mining permittee to revise or modify its permit, although the revision must be based upon a written finding and is subject to notice and hearing requirements. *Natural Resources Commission v. AMAX Coal Co.*, 638 N.E.2d 418, 427 (Ind.1994).

The SMCRA provides:

The regulatory authority shall [pursuant to the required midterm review], review outstanding permits and *may require reasonable revision or modification of the permit provisions* during the term of such permit ...

30 U.S.C. § 1261(c) (1977) (Emphasis added). Similarly, ISMCRA provides:

The director shall, [at the midterm review], review outstanding permits. The director *may require reasonable revision or modification of the permit* provisions during the term of the permit if the revision or modification is based upon a written finding and is subject to the notice and hearing requirements ...

14–34–5–9 (Emphasis added) (1995) (Substance identical to former statute 13–4.1–5–6 (1980)). The applicable federal regulations promulgated under SMCRA require:

after [the required midterm review], or at any time, the regulatory authority may, by order, require reasonable revision of a permit ... *to ensure compliance with the Act and the regulatory program.*

30 CFR § 774.11(b) (Emphasis added). The federal regulations provide further that:

No application for a permit revision shall be approved unless the application demonstrates and the regulatory authority finds that reclamation as required by the Act and the regulatory program can be accomplished, ..., *and the application for a*

*revision complies with all requirements of the Act and the regulatory program.*

30 CFR § 774.13(c) (Emphasis added). Similarly, the regulations promulgated under ISMCRA require:

> After [the required midterm review], the director may, by order, require reasonable revision or modification of the permit provisions *to ensure compliance with [ISMCRA] and this article.*

310 IAC 12–3–120(b) (Emphasis added).

▮ We agree with the following conclusions entered by the ALJ based on the statutory/regulatory scheme set out above:

> 32. It is clear that the legislature contemplated the need over the five year life of a surface coal mining permit for a review of permits and revisions to bring them into conformance with state and federal law changes.
>
> 33. This amounts to a legislative declaration that rule changes can be imposed upon existing permits.

Therefore, we conclude that the trial court erred in determining that the DNR's order, requiring Miner to revise its permit to come into compliance with regulations which had become effective after Miner's permit had been originally issued, constituted an impermissible, retroactive application.

## II

### New versus Old Regulations—More Onerous and Costly?

Miner asserts, and the trial court found, that the 1992 regulations impose substantially more onerous and costly reclamation requirements than the 1990 regulations in effect when Miner's permit was originally issued. Accordingly, the trial court found that the DNR's order requiring Miner to comply with the 1992 regulations exceeded its statutory authority to "require reasonable revision or modification of the permit provisions." *See* I.C. 14–34–5–9 (set out above).

▮ The ALJ had made no such finding that the 1992 regulations imposed substantially more onerous and costly requirements upon Miner. We note at the outset that the trial court's review of administrative determinations is not intended to be a trial de novo, but is rather a process in which the record as a whole is analyzed to determine whether the administrative findings are supported by substantial evidence. *AMAX*, 638 N.E.2d at 423.

▮ In a nutshell, the 1990 regulations required Miner to establish diverse, effective, and permanent vegetative cover on the regraded pasture land at a 90% reclamation level. Ind.Code 13–4.1–8–1(19) (repealed by P.L. 1–1995); 310 IAC 12–5–64 (repealed by the 1992 regulations). The 1992 regulations set the ground cover reclamation standard at 100%; however, the regulations provide that 90% reclamation would be satisfactory. 310 IAC 12–5–64.1(c)(3); 64.1(b). Thus, the reclamation level that miners are required to attain did not change under the 1992 regulations, but remained at 90%. However, the 1992 regulations imposed new, specific sampling techniques (310 IAC 12–5–64.2) and statistical methodologies (310 IAC 12–5–64.3) to be employed in determining whether miners have attained a satisfactory level of reclamation. 310 IAC 12–5–64.1(b). While the implementation of these new sampling techniques and statistical methodologies may very well be more onerous and costly than the techniques and methodologies which had been employed in the past, we nevertheless cannot conclude that the evidence and a review of the applicable regulations leads unerringly to the trial court's conclusion that the DNR's order that Miner bring its permit into compliance with existing regulations constitutes an unreasonable revision or modification in excess of the DNR's statutory authority. After all, the entire role of the DNR under ISMCRA is to ensure that miners comply with the applicable statutory/regulatory requirements.

## III

### Marigold Decisions

Miner relied on an administrative decision reported as *Marigold Mining v. DNR*, 6 CADDNAR 75 (1992) [*Marigold I* ], and a decision of the Spencer Circuit court known as *Marigold Mining, Inc. v. DNR*, Cause

No. 74C01–9304–CP–087 (1994) [*Marigold II*]. In *Marigold I,* the ALJ determined that the regulations which became effective in 1992 could not be applied to a petition for a bond release which had been filed in 1991. In *Marigold II,* the trial court found that the DNR could not apply the 1992 regulations retroactively to the Marigold mining permit because the matter had already been subject to an administrative decision which the DNR had failed to appeal.

Both *Marigold I* and *Marigold II* are factually and procedurally distinguishable from the case at bar. Moreover, an erroneous conclusion of law by an administrative agency is entitled to no weight and has no precedential value. *Peabody,* 629 N.E.2d at 928. Also, the decision of one trial court is not binding upon another trial court. *Hagood v. State,* 182 Ind.App. 317, 395 N.E.2d 315, 320 (1979). Moreover, a conclusion of law by a circuit court in a case from which no appeal has been taken is not binding precedent upon this court. *Martinal v. Lake O' the Woods Club, Inc.,* 140 Ind.App. 358, 210 N.E.2d 130, 131 (1965), *superseded* 248 Ind. 252, 225 N.E.2d 183.[1] The ALJ in the present case correctly concluded that neither *Marigold* decision controlled the disposition of the present case.

## CONCLUSION

Based on the above, we conclude that the trial court erred in determining that the administrative decision of the ALJ was contrary to law. Therefore, we reverse and remand with instructions that the decision of the ALJ be affirmed.

Judgment reversed.

BAKER and NAJAM, JJ., concur.

---

1.  Counsel are admonished that, just as it is inappropriate to cite memorandum decisions of this court as precedent (Ind.Appellate Rule 15(A)(3)), it is similarly inappropriate to cite trial court decisions.