Roberta NOLAND, Appellant–Petitioner,

v.

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, DIVISION OF DISABILITY, AGING, AND REHABILITATIVE SERVICES, Venita Moore, in her official Capacity as Secretary of the Family and Social Services Administration, and Kathleen M. Wilson, in her official Capacity as Assistant Secretary of the Division of Disability, Aging, and Rehabilitative Services, Appellee–Respondent.

No. 49A02–0004–CV–245.

Court of Appeals of Indiana.

Feb. 28, 2001.

---

4. We hereby deny Appellant's request for oral argument, finding that the parties' briefs adequately address the issue.

Milo G. Gray, Jr., Gary W. Ricks, Debbie Dial, Indiana Protection and Advocacy Services, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Roberta Noland appeals the revocation of her Intermediate Care Facility for the Mentally Retarded (ICF/MR) Medicaid community based waiver services. Because we find that the Administrative Law Judge (ALJ) and Family and Social Services Administration (FSSA) adjudicated her eligibility using the wrong standard, we reverse and remand.

### Facts and Procedural History

Noland was born on May 17, 1947. Record at 192. She is diagnosed as having spinabifida with myelomeningocele, paraplegia, mental retardation, and hiatal hernia. She also has a suprapubic catheter due to a bladder condition. In 1988, Noland's full scale IQ was 51 on the Stanford Binet Intelligence Scale and in 1997 she tested 74 on the Wechsler Adult Intelligence Scale–Revised Test. Record at 434. She is non-ambulatory and uses a wheelchair. She is unable to transfer out of her wheelchair without assistance.

In 1996, the Family and Social Services Administration (FSSA) qualified Noland for placement in an Intermediate Care Facility for the Mentally Retarded (ICF/MR). As allowed under the Medic-

aid act, once Noland qualified for placement in an intermediate care facility, the FSSA waived her placement and funded her for community based services. Put differently, her funding for community based services was contingent upon qualifying for placement in an ICF/MR. On October 3, 1997, the FSSA's Office of Medicaid Policy and Planning (OMPP) found that Noland no longer qualified for ICF/MR placement and, thus, she was deemed ineligible for Medicaid based waiver services. OMPP denied Noland an ICF/MR waiver because she did not require twenty-four hour care. Noland appealed the OMPP's decision. Following an evidentiary hearing, the Administrative Law Judge (ALJ) affirmed the denial. In deciding that Noland no longer qualified for ICF/MR placement, the ALJ found that "Based on her level of independent functioning ... Ms. Noland does not require 24 hour supervision, direct or indirect." Record at 438. The FSSA affirmed the ALJ's decision. Noland filed a petition for judicial review. The trial court entered findings of fact, conclusions of law and judgment denying Noland's petition on March 27, 2000. In doing so, the trial court stated:

> While the ALJ and agency focused on a "24–hour care" requirement, the law as identified in *Partlow* and applied to the facts found by the ALJ in this case demonstrate that the ALJ correctly concluded that Ms. Noland did not require the "active treatment" essential to a ICF/MR placement.

Record at 160. This appeal followed.

### Discussion and Decision

#### Standard of Review

 Our review of an administrative decision is limited to determining whether the administrative agency possessed jurisdiction over the matter, and whether the agency's decision was made upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principles.

IND.CODE § 4–21.5–5–14; *Shoot v. FSSA,* 691 N.E.2d 1290, 1292 (Ind.Ct.App.1998). The burden of proving that the agency's action was an abuse of discretion or arbitrary and capricious rests with the party attempting to upset the administrative order. *Partlow v. FSSA,* 717 N.E.2d 1212, 1214 (Ind.Ct.App.1999).

 Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence and judging the credibility of witnesses and must accept the facts as found by the administrative body. *Shoot,* 691 N.E.2d at 1292. An interpretation given a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight. *Ind. Dep't of Natural Resources v. United Minerals, Inc.,* 686 N.E.2d 851, 854 (Ind.Ct.App.1997), *trans. denied.* However, an agency's interpretation which is incorrect is entitled to no weight. *Id.* While evidence before an administrative agency will not be reweighed by the reviewing court, where the agency's finding is contrary to law, it shall be reversed. *Id.* If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action. *Id.* Therefore, the trial court is required to reverse the agency's action as being arbitrary and capricious. *Id.* In construing a statute or administrative regulation, courts must begin with the language of the statute or regulation itself. *See Partlow,* 717 N.E.2d at 1214. Words must be given their plain and ordinary meaning and the statute or regulation must be construed as a whole looking to its object and policy. *Id.*

#### I. Argument

Upon appeal, Noland contends that she has been erroneously denied an ICF/MR waiver. Specifically, she argues that the FSSA and the ALJ improperly required her to need twenty-four hour supervision in order to qualify for the ICF/MR waiver, which is wrong as a matter of law. She also argues that if the law in fact requires

twenty-four hour care, the trial court abused its discretion because the evidence supports that she does require twenty-four hour supervision. Finally, she claims that the trial court abused its discretion by upholding the denial of waiver services on the grounds she did not require active care when neither the FSSA nor the ALJ made any findings and neither party had presented argument previously on the issue of active care. We address each argument in turn.

### A. Twenty–Four Hour Supervision

First, Noland argues that she was erroneously denied ICF/MR waiver services because the ALJ and FSSA applied the wrong standard. In finding her ineligible for ICF/MR waiver services, the ALJ and FSSA held that Noland was required to show she needed twenty-four hour supervision. She contends that applying that standard to an individual was wrong as a matter of law. The State counters that a recipient must require twenty-four hour supervision in order to qualify for ICF/MR waiver services and, thus, no error occurred.[1] We agree with Noland.

In order to determine whether an error occurred, we must examine the statute and regulations at issue. To be eligible for Medicaid waiver services, an individual must first meet the eligibility requirements for admission into an ICF/MR. 42 C.F.R. § 441.301(b)(iii)(C). Once eligibility in such a facility is determined, participating states can provide funding for Home and Community waiver services to eligible individuals. 42 U.S.C. § 1396 et seq.

An ICF/MR is defined as:

[A]n institution (or distinct part thereof) for the mentally retarded or persons with related conditions if—

(1) the primary purpose of such institution (or distinct part thereof) is to provide health or rehabilitative services for mentally retarded individuals and the institution meets such standards as may be prescribed by the Secretary;

(2) the mentally retarded individual with respect to whom a request is made under a plan approved under this subchapter is receiving active treatment under such program.

42 U.S.C. § 1396(d). An "institution for the mentally retarded or person with related conditions" means an institution that:

(a) is primarily for the diagnosis, treatment, or rehabilitation of the mentally retarded or persons with related conditions; and

(b) provides, in a protected residential setting, ongoing evaluation, planning, *24–hour supervision,* coordination, and integration of health or rehabilitative services to help each individual function at his greatest ability.

42 C.F.R. § 435.1009 (emphasis added). When determining whether an individual qualifies for placement in an ICF/MR, a State must:

[M]ake a qualitative judgment on the extent to which the person's status reflects, singly and collectively, the characteristics commonly associated with the need for specialized services, including—

(i) Inability to

(A) Take care of most personal care needs;

(B) Understand simple commands;

(C) Communicate basic needs and wants;

---

1. The State also contends that Noland waived this argument by relying on an unpublished circuit court opinion. It is inappropriate to cite trial court decisions. *See Ind. Dep't of Natural Resources v. United Minerals, Inc.,* 686 N.E.2d 851, 857 (Ind.Ct.App.1997). However, we prefer to decide appeals on the merits rather than a procedural technicality. *See Wright v. Elston,* 701 N.E.2d 1227, 1231 (Ind.Ct.App.1998), *trans. denied.* Thus, we address the merits of Noland's argument.

(D) Be employed at a productive level without systematic long term supervision or support;

(E) Learn new skills without aggressive and consistent training;

(F) Apply skills learned in a training situation to other environments or settings without aggressive and consistent training;

(G) Demonstrate behavior appropriate to the time, situation or place without direct supervision; and

(H) Make decisions requiring informed consent without extreme difficulty;

(ii) Demonstration of severe maladaptive behavior(s) that place the person or others in jeopardy to health and safety; and

(iii) Presence of other skill deficits or specialized training needs that necessitate the availability of training MR personnel, *24 hours per day,* to teach the person functional skills.

42 C.F.R. § 483.136(c)(2) (emphasis added). We examine each regulation in turn.

■ Under 42 C.F.R. § 435.1009 an institution for the mentally retarded is one that "provides ... twenty-four hour supervision ... to help each individual function at his greatest ability." This places the burden of providing twenty-four hour supervision on the institution. However, the regulation does not state that individuals must require twenty-four hour supervision in order to qualify for the services. Thus, the twenty-four hour standard is a facility-based requirement, not a patient-based requirement.

The language of 42 C.F.R. § 483.136(c)(2) directs a State to make a qualitative judgment regarding the characteristics associated with the need for specialized services. Specifically, this regulation mandates the examination of many characteristics of the mentally retarded individual. Among the characteristics it directs a State to examine is whether an individual possesses "other skill deficits or

specialized training needs that necessitate the availability of training MR personnel, 24 hours per day, to teach the person functional skills." 42 C.F.R. § 483.136(c)(2). However, the regulation does not indicate that any one characteristic is dispositive—including a need for twenty-four hour supervision. Further, the regulation does not require that a recipient possess every characteristic listed in order to qualify for ICF/MR care. This is clear because the language of the regulation focuses on judging the "extent to which the person's status reflects, *singly and collectively,* the characteristics commonly associated with the need for specialized services, *including....*" 42 C.F.R. § 483.136(c)(2) (emphasis added). The use of the word "including" implies a non-exhaustive list of characteristics that an individual may possess rather than characteristics that an individual must possess. Thus, the language of the regulation does not necessitate finding that an individual requires twenty-four hour supervision in order to receive ICF/MR placement. To the contrary, it supports using a broader and more inclusive examination of an individual's situation and abilities which may include, but is not limited to, a need for access to twenty-four hour supervision.

Furthermore, requiring the recipient to need twenty-four hour supervision defeats the structure and purposes of the waiver program. States may qualify to provide Home and Community Based Waivers under the Medicaid Act, 42 U.S.C. § 1396 *et seq.* Waiver services are intended to provide home and community based care to individuals who would otherwise be institutionalized. *See* 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI); 42 U.S.C. § 1396n(c). If the law required an individual like Noland to need twenty-four hour supervision in order to qualify for waiver services, she would be better served in an institution. Instead, the waiver program allows an individual who needs active care, but not care twenty-four hours a day the opportunity to receive the needed care in a

less restricted setting. Therefore, requiring Noland to need twenty-four hour care would defeat the purpose of the waiver program.

In addition, waiver services are intended for "particular groups of people for whom such care would be cheaper than the institutionalization care they would otherwise need." *Skandalis v. Rowe*, 14 F.3d 173, 174 (2d Cir.1994) citing 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI) and 1396n(c). Thus, waiver services are intended to provide less expensive non-institutional care to individuals who would otherwise be institutionalized in a more expensive situation. Under the waiver program, the costs must not exceed the costs of services absent a waiver. 42 C.F.R. § 441.303(f)(1). If waiver services were only available to persons who needed twenty-four hour care, no one would ever qualify for waiver services. The cost of providing twenty-four hour care in a non-institutionalized setting would always exceed the cost of providing twenty-four hour care in an institutionalized setting.

Based on the language of the applicable regulations and the structure and purpose of the waiver system, we find that requiring a recipient to need twenty-four hour supervision in order to qualify for the Medicaid waiver is wrong as a matter of law. As we have determined that the ALJ applied the erroneous twenty-four hour supervision standard, we need not reach Noland's argument regarding whether the evidence supported finding that she required twenty-four hour supervision.

### B. Active Care

Next, Noland asserts that the trial court erred by affirming her denial using the active care standard when the ALJ had relied on the twenty-four hour supervision standard. Specifically, she contends that the trial court substituted its judgment for that of the FSSA, violating the Administrative Orders and Procedures Act (AOPA) when its findings went beyond the record before it. The State argues that under *Partlow v. FSSA*, 717 N.E.2d 1212 (Ind.Ct.App.1999), the trial court's decision denying Noland ICF/MR waiver services because she does not require active treatment is appropriate and correct as a matter of law.

Turning to *Partlow*, we are unconvinced by the State's argument. In *Partlow*, Carl Partlow, who had been diagnosed with slight mental retardation, appealed the denial of his placement in an ICF/MR. On appeal, he argued that the denial of his placement in an ICF/MR was contrary to law because it was undisputed that he was mentally retarded. The State argued that eligibility for ICF/MR placement is conditioned not upon mental retardation, but upon an individual's need for active treatment in an ICF/MR. This court agreed with the State. *Id.* at 1216.

As we found in *Partlow*, an ICF/MR must provide "active treatment" in order to receive Medicaid funding. *Id.* In order to provide "active treatment services" as defined by federal regulations:

(1) Each client must receive a continuous active treatment program, which includes aggressive, consistent implementation of a program of specialized and generic training, treatment, health services and related services described in this subpart, that is directed toward—

 i. The acquisition of the behaviors necessary for the client to function with as much self determination and independence as possible; and

 ii. The prevention or deceleration of regression or loss of current optimal functional status.

(2) Active treatment does not include services to maintain generally independent clients who are able to function with little supervision or in the absence of a continuous active treatment program.

42 C.F.R. § 483.440(a). Furthermore, 42 C.F.R. § 483.440(b)(1) provides that "[c]lients who are admitted by the facility must be in need of and receiving active treatment services."

*Partlow* can be distinguished from this case. In reaching our decision that Partlow was not eligible for ICF/MR placement, this court noted that both the ALJ and the trial court specifically concluded in their decisions that Partlow was not in need of active treatment. *Partlow* at 1216. Here, the issue of active care was not adjudicated at the administrative level whereas, in *Partlow,* active care had been an issue in the case before it reached the trial court. Therefore, while *Partlow* provides the proper standard to be used when determining whether an individual qualifies for ICF/MR placement, it does not change the outcome in the instant case because here the trial court tried the cause de novo and substituted its judgment for that of the administrative agency.

Active treatment is the standard under which the FSSA and the ALJ should have examined Noland's case. Because the FSSA and the ALJ failed to apply the proper standard and the trial court went beyond the scope of the record, we reverse and remand for the ALJ to determine whether Noland qualifies for a Medicaid based waiver using the active treatment standard.

Reversed and remanded.

KIRSCH, J., and NAJAM, J., concur.