Rita HUBBARD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0509–CR–409.

Court of Appeals of Indiana.

June 29, 2006.

Transfer Denied Aug. 31, 2006.

---

William J. Cohen, Elizabeth A. Bellin, Cohen Law Offices, Elkhart, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Rita Hubbard ("Hubbard") appeals her convictions for two counts of Sexual Misconduct by a Service Provider, Class D felonies.[1] We affirm.[2]

### Issues

Hubbard presents four issues for review, which we have consolidated and restated as follows:

I. Whether Hubbard's conduct violated the Sexual Misconduct Statute; and

II. Whether the Sexual Misconduct Statute violates Hubbard's right to due process under the United States Constitution.

### Facts and Procedural History

During January of 2003, Hubbard was a civilian employee at the Goshen Work Release Center and Daniel Ross ("Ross") was a work release detainee in that facility. On two occasions when Ross was away from the work release center on an eight-hour pass, and Hubbard was off duty, Ross and Hubbard had consensual sexual relations at a motel in Elkhart County.

On March 31, 2004, the State charged Hubbard with two counts of sexual miscon-

duct by a service provider. Hubbard filed two motions to dismiss the charges, the first alleging that the "charging information violates Due Process" (App. 19), and the second challenging the constitutionality of the Sexual Misconduct Statute on Due Process and First Amendment grounds. The trial court denied the motions to dismiss, and refused to certify its order for an interlocutory appeal.

On May 2, 2005, a jury convicted Hubbard as charged. She was sentenced to eighteen months imprisonment, with twelve months suspended to probation. She now appeals.

### Discussion and Decision

#### I. Violation of the Sexual Misconduct Statute

■ Hubbard concedes that she was an employee of the Goshen Work Release Center and that she knew Ross was a detainee when she had sexual intercourse with him. However, Hubbard claims that her off-duty conduct, with a detainee who was on leave, did not violate Indiana Code Section 35–44–1–5, which provides:

(a) As used in this section, "service provider" means a public servant or other person employed by a governmental entity or another person who provides goods or services to a person who is subject to lawful detention.

(b) A service provider who knowingly or intentionally engages in sexual intercourse or deviate sexual conduct with a person who is subject to lawful detention commits sexual misconduct, a Class D felony.

(c) It is not a defense that an act described in subsection (b) was consensual.

---

1. Ind.Code § 35–44–1–5 ("the Sexual Misconduct Statute").

2. Oral argument was conducted on May 4, 2006, in the Indiana Court of Appeals courtroom. We thank counsel for their advocacy.

(d) This section does not apply to sexual intercourse or deviate sexual conduct between spouses.

 Specifically, Hubbard claims that, at the time of the sexual acts, she was not acting as a "service provider," and Ross was not "subject to detention," within the parameters of the foregoing statute. A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Denney v. State,* 773 N.E.2d 300, 301 (Ind.Ct. App.2002). When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Id.* However, we may not interpret a statute that is clear and unambiguous on its face. *Id.* Rather, the words of the statute are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* at 301–302. The language employed in a statute is deemed to have been used intentionally. *Id.* at 302.

 When a term used in a criminal statute is not defined, penal statutes are to be strictly construed against the State and should be held to prohibit only that conduct which is clearly within the spirit and letter of the statutory language. *Glover v. State,* 760 N.E.2d 1120, 1124 (Ind.Ct.App. 2002), *trans. denied.* However, criminal statutes are not to be narrowed to the point that they exclude cases that the language fairly covers. *Id.*

The Sexual Misconduct Statute is clearly intended to discourage sexual contact between individuals subject to detention and those entrusted with their care or supervision. It serves the dual purposes of preventing favoritism because of a sexual relationship and preventing retaliation because of that relationship. The Indiana Legislature specifically included a "person employed by a governmental entity" within the definition of "service provider."[3] There is no limiting language, or exclusion of part-time, temporary, or off-duty employees. Hubbard did not cease to be employed by a governmental entity when she left the premises, and must be considered a "service provider" according to the plain language of the statute.

Furthermore, the Legislature employed inclusive language regarding the detainee. Hubbard's argument that Ross was merely in constructive custody rather than actual physical custody is unavailing, because the statute does not require that the detainee be "in custody." Rather, the detainee need only be "subject to lawful detention." The definition of lawful detention found in Indiana Code Section 35–41–1–18 includes "placement in a community corrections program's residential facility[.]" Ross was given a temporary pass, whereby he was restricted to the confines of Elkhart County and required to return to the work release facility within eight hours. He did not cease to be "subject to detention" when he was given a temporary pass, upon the condition that he timely return.

Accordingly, we conclude that Hubbard's sexual conduct with a work release detainee violated the express provisions of the Sexual Misconduct Statute.

## II. *Violation of Right to Due Process*

 Hubbard next argues that the Sexual Misconduct Statute as applied to her violates her right of privacy under the Due Process Clause of the United States

---

**3.** Black's Law Dictionary 543 (7th ed.1999) defines an "employee" as "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."

Constitution.[4] A statute is presumed constitutional until the party challenging the statute clearly overcomes the presumption by a contrary showing. *Logan*, 836 N.E.2d at 470. This Court may nullify a statute on constitutional grounds only where such a result is clearly rational and necessary. *Id.*

Hubbard claims that engaging in consensual sexual relations is an exercise of a liberty interest under the Due Process Clause, and she had the right to be free of governmental intrusion into a private matter. In support of this argument, Hubbard relies upon *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), wherein the United States Supreme Court struck down a Texas statute criminalizing consensual homosexual sodomy, because it violated the Due Process Clause. "Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct." *Id.* at 562, 123 S.Ct. 2472.

■■■ Nonetheless, *Lawrence* does not dictate the result Hubbard desires, an unencumbered right to engage in sexual relations with any consensual partner of one's choice. The right of privacy is not absolute, but is immune only from *unjustified*

government interference. *Carey v. Pop. Serv., Intern'l*, 431 U.S. 678, 687, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The *Lawrence* Court specified that the Texas statute was unconstitutional because it "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." 539 U.S. at 578, 123 S.Ct. 2472.

Here, unlike the Texas statute in *Lawrence*, the legislation furthered a legitimate governmental interest in regulating the sexual activity between detainees and the service providers charged with their care and supervision. As previously observed, service providers have the ability by virtue of their positions to coerce compliance or authorize privileges.[5] It is apparent that favoritism toward certain detainees, or unfounded retaliation against them, could undermine the integrity of the correctional facility. Accordingly, Hubbard has not demonstrated that the Sexual Misconduct Statute is an unjustified state intrusion into her personal liberty.

## Conclusion

The Sexual Misconduct Statute applies to the facts of this case, inasmuch as Hubbard was a service provider and Ross was

---

4. Hubbard attempts to lodge other constitutional challenges to the Sexual Misconduct Statute, without bringing them to fruition. She makes a cursory allegation that the statutory language excluding the defense of consent creates a mandatory presumption relieving the State of its burden of proof on an essential element of the crime, thereby denying an accused due process. However, she fails to develop a cogent argument explaining how the exclusion of a defense relieves the State of its burden to prove the material elements of the charged crime. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (holding that the State must prove every material element of a criminal offense beyond a reasonable doubt, and a jury instruction that shifts the State's burden to the defendant is a Due Process violation).

Hubbard also initially identifies an issue of whether the Sexual Misconduct Statute is overbroad because it restricts freedom of association and consensual sexual activity. The First Amendment overbreadth doctrine allows an individual to attack the constitutionality of a statute that applies to protected speech. *Logan v. State*, 836 N.E.2d 467, 472 (Ind.Ct. App.2005), *trans. denied*. However, Hubbard does not claim that her conduct was "protected speech" and she essentially abandons the overbreadth issue by conceding that she is not making a "challenge traditionally found in traditional First Amendment jurisprudence." Reply Br. at 7.

5. In Hubbard's case, it is uncontroverted that she was expected to report any conduct violations by a detainee that she observed.

subject to detention at the time of the conduct at issue. Moreover, Hubbard has failed to establish that the Sexual Misconduct Statute is unconstitutional.

Affirmed.

BAKER, J., and NAJAM, J., concur.