Mario BROWN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1008–CR–905.

Court of Appeals of Indiana.

April 27, 2011.

Transfer Denied June 29, 2011.

Victoria L. Bailey, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Karl Scharnberg, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary[1]

Appellant–Defendant Mario Brown ("Brown") appeals the Marion County

---

1. We held oral argument in this case on March 9, 2011, at Jeffersonville High school in Jeffersonville, Indiana. We thank counsel for their able advocacy, and extend our ap-

Court's order following the revocation of his placement in Marion County Community Corrections. We affirm.

## Issues

Brown raises one issue for our review, which we restate as the following three issues:

I. Whether Ind.Code § 35–38–2.6–6, as amended, should apply retroactively to his case, thereby making him eligible for credit time[2] for the period he spent in community corrections;

II. Whether applying I.C. § 35–38–2.6–6 only prospectively denies Brown Equal Protection under the Fourteenth Amendment of the United States Constitution; and

III. Whether the trial court abused its discretion in denying him any credit time for which he was eligible.

## Facts and Procedural History

On April 14, 2009, Brown pled guilty to Operating a Motor Vehicle after License Forfeited for Life, as a Class C felony. On May 27, 2009, the trial court imposed a three year sentence, and ordered Brown to serve it in the Marion County Community Corrections Home Detention Electronic Monitoring Program.

During the 2010 legislative session, the Indiana General Assembly amended the statute concerning credit time eligibility for persons serving on home detention in community corrections programs. 2010 Ind. Acts 1217–36. Before amendment, the statute stated:

(a) As used in this subsection, "home" means the actual living area of the temporary or permanent residence of a person. The term does not include a:

(1) hospital;

(2) health care facility;

(3) hospice;

(4) group home;

(5) maternity home;

(6) residential treatment facility;

(7) boarding house; or

(8) public correctional facility.

A person who is placed in a community corrections program under this chapter is entitled to earn credit time under IC 35–50–6 unless the person is placed in the person's home.

(b) A person who is placed in a community corrections program under this chapter may be deprived of earned credit time as provided under rules adopted

---

preciation to Leadership Southern Indiana and Jeffersonville High School for hosting the oral argument.

2. Both Brown and the State use the term "good time credit" in their briefs, but the Indiana Code uses "credit time" to refer to the statutory reward an offender receives when he follows the rules of a penal facility, community transition program, or community corrections program. *See* Ind.Code § 35–50–6–3 ("A person assigned to Class I earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting trial or sentencing"); *also Purcell v. State*, 721 N.E.2d 220, 223 (Ind.1999) (agreeing with the Indiana Court of Appeals that "credit

time" means good time credit). In fact, the General Assembly amended Ind.Code § 35–50–6–3 in 1977 by substituting "credit time" for "good time." *Campbell v. State*, 714 N.E.2d 678, 680 n. 2 (Ind.Ct.App.1999). To mirror the Indiana Code's language, we refer to Brown's request for "good time credit" as one for "credit time." "Credit time" should also be distinguished from "credit for time served," which refers to actual days served against one's sentence. In this case, Brown received credit for time served against his sentence for the days he spent in community corrections, and does not challenge any aspect of that calculation.

by the department of correction under IC 4–22–2.

I.C. 35–38–2.6–6 (2004).

The statute, amended and effective July 1, 2010, currently states:

(a) As used in this subsection, "home" means the actual living area of the temporary or permanent residence of a person. A person who is placed in community corrections under this chapter is entitled to earn credit time under IC 35–50–6.

(b) A person who is placed in a community corrections program under this chapter may be deprived of earned credit time as provided under rules adopted by the department of correction under IC 4–22–2.

I.C. 35–38–2.6–6.

On July 15, 2010, Marion County Community Corrections filed a Notice of Community Corrections Violation, alleging that Brown failed to comply with the rules and regulations of his placement because he twice tested positive for marijuana. The trial court held a hearing on the alleged violations on July 22, 2010, where Brown admitted to the violations. It then ordered that Brown serve the balance of his original three-year sentence in the Department of Correction ("DOC"). He received credit for the 412 days served in community corrections, but received no credit time for this period.[3]

On July 29, 2010, Brown filed a Motion for Additional Credit Time, arguing that the Indiana General Assembly intended the amended version of I.C. § 35–38–2.6–6 to apply retroactively, and consequently, he was eligible for (and should receive) credit time in addition to his credit for time served while in community corrections. In his motion, he also argued that denying him credit time eligibility violates his right to Equal Protection under the Fourteenth Amendment to the U.S. Constitution. The trial court denied his motion and he now appeals.

## Discussion and Decision

### Standard of Review

For the purposes of appellate review, we treat the revocation of placement in a community corrections program the same as we do the revocation of probation. *Brooks v. State*, 692 N.E.2d 951, 953 (Ind. Ct.App.1998). "[P]lacement in a community corrections program is an alternative to commitment to the Department of Correction and made at the sole discretion of the trial court ... a defendant is not entitled to serve his sentence in a community corrections program but, as with probation, placement in the program is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" *Million v. State*, 646 N.E.2d 998, 1001–02 (Ind.Ct.App.1995). We review a trial court's sentencing decisions for probation violations for an abuse of discretion. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind.2007). A court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances. *Id.*

### Retroactive Application of the Statute

Brown's principal argument for credit time eligibility is that Indiana Code section 35–38–2.6–6 is a remedial statute that the General Assembly intended to apply retroactively.[4] "The general rule of

---

3. Brown also received twelve days credit for time served and twelve days of credit time for periods he spent in confinement.

4. Brown served time in community corrections home detention both before the July 1, 2010, amendment and after the amendment. He does not, however, make a separate argument on appeal addressing any differences in the amendment's applicability to his time served after July 1, 2010. However, the trial

statutory construction is that unless there are strong and compelling reasons, statutes will not be applied retroactively." *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005). "Statutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well." *Id.* The exception to this rule is "remedial statutes," which are "intended to cure a defect or mischief that existed in a prior statute." *Id.* "Remedial statutes will be applied retroactively to carry out their legislative purpose unless to do so violates a vested or constitutional guaranty." *Id.*

■■■■ However, not all remedial statutes are automatically applied retroactively—"[i]t has long been the law in this jurisdiction that although statutes and rules concerning procedural and remedial matters *may* be made to operate retroactively, it is not the case that they *must* apply retroactively." *Id.* (citing *State ex rel. Uzelac v. Lake Crim. Ct.*, 247 Ind. 87, 212 N.E.2d 21, 24 (1965)) (emphasis in original). Retroactive application must also not violate a vested right or constitutional guaranty. *Bourbon Mini–Mart, Inc. v. Gast Fuel & Svcs., Inc.*, 783 N.E.2d 253, 260 (Ind.2003). Therefore, retroactive application of a statute is appropriate when: (1) the new statute is remedial; (2) a strong and compelling reason exists for applying it retroactively; and (3) retroactive application does not violate a vested right or a constitutional guaranty. *See*

*Walsman v. State*, 855 N.E.2d 645, 650 (Ind.Ct.App.2006).

■■■■ Thus, the first issue to address is whether the amendment to I.C. § 35–38–2.6–6 is remedial in nature. A statute is remedial when it is "intended to cure a defect or mischief that existed in a prior statute." *Pelley*, 828 N.E.2d at 919. We have also found statutes to be remedial when they are enacted in response to case law, *Hurst v. State*, 890 N.E.2d 88, 95 (Ind.Ct.App.2008), or are a particular type of law which are inherently remedial. *Bourbon Mini–Mart*, 783 N.E.2d at 260–61. In deciding whether a statute is remedial, we look to, among other things, the alleged mischief or defect the statute seeks to cure. *State ex rel. Indiana State Bd. of Dental Examiners v. Judd*, 554 N.E.2d 829, 832 (Ind.Ct.App.1990). If a statute is remedial, it should be liberally construed to advance the remedy for the mischief for which it was enacted. *State ex rel. Griswold v. Blair*, 32 Ind. 313, 316 (1869).

Brown particularly directs our attention to *Martin v. State*, where our supreme court found remedial a statute concerning credit for time served while on home detention as a condition of probation, and applied it retroactively. 774 N.E.2d 43, 45 (Ind.2002). In that case, while Martin's credit for time served appeal was pending, the General Assembly amended the statute to provide that a person earns credit for time served on home detention as a condition of probation; previously, the law was

---

judge made statements at the hearing tending to indicate that the two periods could potentially be treated differently. Tr. 5. This approach is incorrect. "The sentencing statute in effect at the time a crime is committed governs the sentence for that crime." *Harris v. State*, 897 N.E.2d 927, 928–29 (Ind.2008). An exception exists when a penalty is decreased by a statute enacted after the commission of the crime but prior to the defendant's trial and sentencing. *Pritscher v. State*, 675

N.E.2d 727, 733–34 (Ind.Ct.App.1996). Under the doctrine of amelioration, when the penalty for a crime is decreased by an amendment enacted after the commission of the crime but prior to sentencing, the defendant may take advantage of the ameliorative statute. *Id.* Here, Brown was sentenced well before the amended statute came into effect and therefore, because the statute is not retroactive, he does not receive the benefit of the change in law. *See id.* at 734.

silent on the matter. *Id.* at 44. As a result of the statute's past silence, a split in authority emerged in the Indiana Court of Appeals, eventually leading us to encourage the General Assembly to address the issue because, as it stood, the area was laden with contradiction and confusion. *Id.* at 45. The General Assembly "apparently responded" to the judiciary's request by amending the law, and in light of that response, our supreme court concluded that the General Assembly's amendment was remedial because it cured the prior statute's defect of silence. *Id.* The Court then applied the statute retroactively to Martin's case to carry out the amendment's legislative purpose. *Id.*

Despite the similarity in subject matter between *Martin* and the case here, we find the purpose for the change easily distinguishable from *Martin.* Prior to July 1, 2010, I.C. § 35–38–2.6–6 explicitly excluded those serving out sentences on home detention from receiving credit time; the amendment lifted that restriction. Thus, Brown essentially argues that the "defect" that the General Assembly sought to remedy was its explicit intent, expressed through the statute's language. The General Assembly even took an extra step in the prior statute by defining "home" and listing enumerated exceptions to the term. I.C. § 35–38–2.6–6 (2004). Dissimilar to *Martin,* the legislature's intent was unambiguous and the judiciary readily interpreted the language: "Ind.Code § 35–38–2.6–6 deprives the offender serving time on home detention of the ability to 'earn credit time under Ind.Code § 35–50–6.'" *Purcell,* 721 N.E.2d at 223 (emphasis in original removed).

Thus, whereas in *Martin* the legislature offered no statutory guidance as to its intent, leading to confusion in the courts (thus, the defect), here, the General Assembly was very specific regarding its in-

tent on the matter of credit time eligibility. That is it has now reversed course on the underlying policy in the statute so there is no reason to view the prior statute as defective. We also note that I.C. § 35–38–2.6–6 was enacted as part of a broader package of amendments concerning community corrections programs, 2010 Ind. Acts 1217–36 ("An Act to amend the Indiana Code concerning corrections"), which suggests that the General Assembly was engaged in wholesale changes to community corrections programs and not seeking to cure a singular defect or mischief of the prior statute. Therefore, we decline to find I.C. § 35–38–2.6–6 to be a remedial statute.

Even if I.C. § 35–38–2.6–6 were remedial by nature, Brown's retroactivity argument still fails. Again, even if a statute is remedial, we must also have "strong and compelling reasons" to read a remedial statute retroactively, and, absent clear legislative intent to the contrary, the general rule is that laws apply prospectively. *Pelley,* 828 N.E.2d at 920; *see also Indiana Dept. Natural Resources v. United Minerals, Inc.,* 686 N.E.2d 851, 855 (Ind.Ct.App.1997), *trans. denied* ("Absent an express indication otherwise, we presume that the legislature intended that the new statutes or amendments be applied prospectively only."); *Bourbon Mini–Mart,* 783 N.E.2d at 260 ("Ultimately . . . whether or not a statute applies retroactively depends on the Legislature's intent."). However, such intent need not be explicit in the law's text. *Conn. Mut. Life Ins. Co. v. Talbot,* 113 Ind. 373, 14 N.E. 586, 589 (1887); *see also Hurst,* 890 N.E.2d at 95 (holding that, "[t]hough the legislature did not expressly provide for retroactive application of the amended statute, we are confident that this was the clear intent of such legislation" when our supreme court reversed twenty years of

case law on a matter and the legislature superceded that opinion by statute four months later). To ascertain legislative intent as to whether the legislature intended a new statute or amendment to be applied retroactively or prospectively only, we look to the act as a whole and consider each section with reference to all other sections and presume that the General Assembly would not intend an unreasonable or absurd result. *Indiana Dept. Natural Resources*, 686 N.E.2d at 855.

Reading I.C. § 35–38–2.6–6 retroactively yields a result which we presume the legislature would not intend. Although the Indiana Code does not define "credit time," our supreme court has stated that it is "a statutory reward for a lack of conduct that is in violation of institutional rules." *Boyd v. Broglin*, 519 N.E.2d 541, 542 (Ind. 1988). Also, we have previously held that "[t]he purpose of the legislature in enacting 'good time' credit statutes was to encourage inmates of penal institutions to behave well while confined, to improve their morale, and thus help prison authorities to maintain order and control." *State v. Eckhardt*, 687 N.E.2d 374, 376 (Ind.Ct. App.1997). We do not think that, in amending I.C. § 35–38–2.6–6, the General Assembly intended to incentivize offenders' past behavior. We are equally doubtful that it would allow for, essentially, the post-hoc halving of sentences without at least some indication that it was intentionally pursuing such an end. Absent any indication to the contrary, we decline to retroactively apply the credit time statute to Brown's case.

### Equal Protection

■ Brown next argues that not retroactively applying I.C. 35–38–2.6–6 deprives him of Equal Protection under the Fourteenth Amendment to the U.S. Constitution. Specifically, he maintains that exclusively prospective statute application creates two classes of defendants—those sentenced to home detention before the amendment and those sentenced after— and that there is no rational basis for treating these classes differently regarding the availability of credit time.

An inmate does not have a constitutional right to receive credit time. *Cottingham v. State*, 424 N.E.2d 105, 106 (Ind.1981). Credit time is a state-created right, and any concept of liberty attaches only when the state, in fact, grants the credits. *Id.* at 107. Because Brown has not asserted a fundamental right or denial of Equal Protection based on a suspect classification, rational basis review applies to his challenge. *See id.* at 107. Under rational basis review, so long as the credit time eligibility distinction presented here furthers a legitimate state purpose, it will be upheld. *See id.*

In *Cottingham*, our supreme court addressed an equal protection challenge similar to Brown's. Henry Cottingham was sentenced to twenty-five years in prison in 1973, and was credited for the 213 days he spent in county jail from arrest to sentencing. 424 N.E.2d at 105–06. He did not receive credit time for his presentence detention because at the time persons imprisoned before sentence were not eligible for such credit. In 1977, the General Assembly added a statute permitting credit time eligibility for presentence incarceration, and Cottingham filed a petition for post-conviction relief requesting retroactive application of the statute to his sentence, arguing that it would be an Equal Protection violation to do otherwise. *Id.* In denying his request, our supreme court concluded that the State has a rational interest in not applying the statute retroactively because "recomputation of the good time credit that may possibly accrue to every prisoner who had been a pre-trial detainee prior to October 1, 1977, would be a heavy burden to bear." *Id.* at 107. "Adequate records may not have been kept as

to whether or not a defendant behaved in a satisfactory manner" and "[t]he administrative costs would be excessive and recalculation of good time credits would have to be done every time the legislature decided to experiment in this area." *Id.*

Here, the State again cites the avoidance of the administrative burden of recalculating sentences as a legitimate government interest. Brown replies that the State's administrative burden is not onerous because his class is much smaller than the class in *Cottingham,* and that records of his conduct should already exist because such records must be kept pursuant to Ind.Code § 35–38–2.6–4.2(b). We disagree. The statutory law he cites, I.C. § 35–38–2.6–4.2(b), was added on July 1, 2010 to require the keeping of records that Brown maintains should already exist. 2010 Ind. Acts 1230; I.C. § 35–38–2.6–4.2. Given the ruling in *Cottingham,* and the likely dearth of administrative records kept on the daily activities of offenders on home detention prior to July 1, 2010, we find the State's interest in avoiding administrative costs to be legitimate.

■ We also accept the State's argument that it has a legitimate interest in protecting the integrity of sentences already imposed: "[a]t the time the [plea agreement] was entered and Defendant was sentenced, the parties and the trial court expected that if home detention was ordered, then Defendant would serve three actual years under supervision." Appellee's Br. p. 10. Brown entered into a plea agreement for a three year sentence, and a plea agreement constitutes a contract between the defendant and the State that becomes binding upon both parties when the trial court accepts it. *Owens v. State,* 886 N.E.2d 64, 67 (Ind.Ct. App.2008), *trans. denied.* When the trial court imposed Brown's sentence, it may well have considered several correctional settings, but determined that Brown should serve his sentence in a setting where he would be ensured to serve out the full three years. The State has, we think, a legitimate interest in protecting the integrity of that sentence. Just as equally, it has a legitimate interest in not encroaching upon the judiciary's sentencing authority. As has been stated elsewhere:

> The legislature could have reasonably relied on the fact that in imposing sentence a judge frequently takes into account existing systems of computing good time. It could then have determined that the more liberal method of awarding good time credits under [the new law] should not be made retroactive for the reason that had it been in effect prior to [the date of change], longer sentences would have been imposed initially upon appellant and other similarly situated prisoners.

*Frazier v. Manson,* 703 F.2d 30, 35 (2nd Cir.1983). Brown does not challenge this argument on appeal, and we conclude that the State has a rational interest in protecting the legitimacy of existing sentences and plea agreements.

### Conclusion

Because the credit time statute at issue here is not remedial, and exclusively prospective application does not violate Brown's constitutional right to Equal Protection, we need not discuss the underlying merits of Brown's credit time request. Brown was not eligible to earn credit time while on home detention, and therefore the trial court did not abuse its discretion in imposing its order following his placement revocation.

Affirmed.

NAJAM, J., and DARDEN, J., concur.