**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 15 2014, 6:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LLOYD W. MEZICK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1307-CR-649 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48D04-1003-FC-73

**April 15, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Lloyd W. Mezick (Mezick), appeals the trial court's revocation of his placement in a community corrections program.

We affirm.

## ISSUE

Mezick raises one issue on appeal, which we restate as: Whether the trial court abused its discretion in revoking Mezick's placement in a community corrections program and ordering that he serve the remainder of his sentence in the Indiana Department of Correction (DOC).

## FACTS AND PROCEDURAL HISTORY

On July 27, 2009, the State filed an Information charging Mezick with non-support of a dependent child, a Class C felony. Although Mezick's son is now an adult, the Information alleged that Mezick failed to pay child support between 1997 and 2009, with his arrears totaling $16,101.79. As Mezick was arrested on several occasions in 2009, which resulted in multiple other charges, he spent the next year involved in ongoing plea negotiations and hearings.

On October 7, 2010, the State and Mezick submitted a plea agreement to the trial court in which Mezick pled guilty. In exchange for Mezick's waiver of his right to be sentenced within thirty days, the trial court stayed Mezick's guilty plea and referred Mezick to the Madison County Mental Health Court. Contingent upon Mezick's successful completion of the Mental Health Court Program (MHCP), the State agreed to dismiss

Mezick's charge. However, the plea agreement provided that if Mezick failed to complete the MHCP, or if he failed to remit his child support payments, the trial court would enter a judgment of conviction and sentence Mezick accordingly.

On January 14, 2011, the trial court issued a warrant for Mezick's apprehension following the Mental Health Court's report that Mezick had failed to appear for a drug screen and other treatment appointments. On February 28, 2011, the Mental Health Court notified the trial court that Mezick had absconded and that he had failed to comply with the MHCP's requirements. The trial court immediately terminated Mezick's participation in the MHCP. Mezick denied violating the terms of the MHCP, and the trial court set the matter for an evidentiary hearing.

Prior to the hearing, the trial court determined that Mezick should undergo a mental health evaluation to determine his competency to stand trial. In August of 2011, a psychologist and a medical doctor each assessed Mezick on separate occasions. Although both court-appointed professionals reported that Mezick suffers from mental disorders, both also found that he was competent to stand trial. As a result, on November 14, 2011, the trial court conducted the evidentiary hearing. Finding Mezick had violated the terms of his plea agreement by absconding from the MHCP, the trial court sentenced Mezick to a term of six years, with four years executed and two years suspended, to be served consecutive to a prior sentence.[1] The trial court authorized Mezick to serve the executed portion of his sentence in community corrections—specifically, in work release.

---

[1] The plea agreement also incorporated six additional charges stemming from two other arrests in 2009. The trial court imposed an aggregate sentence of twelve years—six years executed in the DOC, four years

3

Following the completion of his prior sentence, as well as a community transition program, Mezick was transferred to the Madison County Work Release Center on April 7, 2013. Initially, Mezick had difficulty finding employment, but he eventually began working for a temporary labor agency. On the morning of May 9, 2013, Mezick left the Work Release Center to go to work and he never returned. On May 13, 2013, the Work Release Center filed a petition to terminate Mezick's participation in work release, and on May 15, 2013, the trial court issued a warrant. Mezick turned himself in the next month.

On July 8, 2013, the trial court conducted an evidentiary hearing. Mezick testified that he never returned to work release because he needed to see his son, who was sick, and because he wanted to get some paperwork from his son's mother to relieve his child support obligation. At the close of the evidence, the trial court found that Mezick had "violated the conditions of his work release placement and his suspended sentence." (Appellant's App. p. 7). As a result, the trial court revoked Mezick's work release privilege and suspended sentence and ordered that Mezick serve the balance of his six-year term in the DOC.

Mezick now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

A defendant's placement in a community corrections program is a matter within the sole discretion of the trial court. *Toomey v. State*, 887 N.E.2d 122, 124 (Ind. Ct. App.

---

executed in work release, and two years suspended to probation. *See Mezick v. State*, No. 48A02-1112-CR-1170 (Ind. Ct. App. Aug. 15, 2012). As Mezick's violation of work release pertains only to his charge for non-support of a dependent child, we do not discuss the other charges.

4

2008). We review sentencing decisions for an abuse of discretion. *Brown v. State*, 947 N.E.2d 486, 489 (Ind. Ct. App. 2011), *trans. denied*. We will find an abuse of discretion if the trial court's "decision is clearly against the logic and effect of the facts and circumstances." *Id.* On review, we do not reweigh the evidence or assess the credibility of witnesses, and we construe all evidence in favor of the trial court's judgment. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). The State must prove the alleged violations by a preponderance of the evidence to merit revocation. *Id.* Thus, there must be "substantial evidence of probative value" supporting the trial court's conclusion that Mezick violated the terms of his community corrections placement. *Id.*

## II. *Revocation*

Mezick claims that the trial court abused its discretion by revoking his participation in work release. A placement in a community corrections program—such as work release—is an alternative to incarceration in the DOC. *Brown*, 947 N.E.2d at 489. If the trial court authorizes placement in community corrections, it "is a matter of grace and a conditional liberty that is a favor, not a right." *Toomey*, 887 N.E.2d at 124 (internal quotation marks omitted).

> If a person who is placed [in community corrections] violates the terms of the placement, the [trial] court may, after a hearing, do any of the following:
> (1) Change the terms of the placement.
> (2) Continue the placement.
> (3) Revoke the placement and commit the person to the [DOC] for the remainder of the person's sentence.

Ind. Code § 35-38-2.6-5. In this case, Mezick does not dispute the trial court's finding that Mezick violated the terms of his placement by failing to return to the Work Release Center.

5

Instead, he contends that the trial court should have imposed a sanction other than remand to the DOC in light of both his significant mental health problems and his justifications for absconding.

A. *Mental Health Issues*

Mezick claims that the trial court abused its discretion by failing to properly consider his mental health problems as a mitigating circumstance. Because of his mental health conditions, Mezick contends that the trial court should have assigned him to a continuum of sanctions program, which "would enable him to get mental health treatment, to see his only child[,] and to escape the high financial cost of work release." (Appellant's Br. p. 9). Our court has previously held that, "at a minimum, a probationer's mental state must be considered in the dispositional determination of a probation revocation proceeding." *Patterson v. State*, 659 N.E.2d 220, 222-23 (Ind. Ct. App. 1995).[2]

In this case, Mezick presented evidence of his mental health problems, including testimony that he has been diagnosed with depression, bipolar disorder, and schizophrenia, and that he was placed on suicide watch at the jail following his escape from work release. In addition, the trial court took judicial notice of the two mental health evaluations filed in Mezick's competency proceeding, which described Mezick as depressed, anxious, and having mood fluctuations, among other personality traits and "psychotic features." (Appellant's App. p. 81). Both experts also opined that Mezick understood his charges

---

[2] Petitions to revoke community corrections placements are treated the same as petitions for probation revocation. *Monroe*, 899 N.E.2d at 691.

6

and, although capable of complying with instructions, that he tends to use poor judgment and to act impulsively without consideration of the consequences.

Evidence of "a mental disease or defect is not dispositive of [the] case." *Patterson*, 659 N.E.2d at 223. Rather, the trial court is obligated only to consider the information as a factor in making its dispositional determination, and it retains full discretion to find that the evidence of a mental health condition does not excuse or mitigate the work release violation. *See id.* Here, at the close of the evidentiary hearing, the trial court explained:

> Mr. Mezick, no one here doubts that you have some mental health conditions that would benefit from treatment. The question is, what tools do we have that could work for you with, uh, with treatment that also provides for the appropriate supervision and punishment. We've tried the two (2) most closely monitoring programs that we have which are Work Release and [the MHCP], and you absconded from both of those. I don't think we have anything left here locally that could work for you. I think the only option we have to get you in contact with mental health services, that you're [going to] comply with, is the [DOC].

(Transcript p. 28). Additionally, the trial court noted its plan to provide the DOC with access to Mezick's mental health evaluations to ensure that Mezick received the necessary treatment. Accordingly, we find that the trial court revoked Mezick's participation in work release after properly considering both Mezick's history of non-compliance and his need for mental health services.

## A. *Justifications for Absconding*

Mezick also claims that the trial court abused its discretion because his justification for failing to return to work release warrants a lesser sanction than revocation. Mezick cites to *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008), where our supreme court determined that, even though probationers are subject to a "strict compliance" standard,

7

due process affords a defendant the opportunity to defend his probation violation before the trial court may revoke the privilege. Explaining that mitigating circumstances might warrant a penalty other than revocation, the *Woods* court noted examples demonstrating a probationer's "lack of volition," such as failing to report when in a coma or failing a drug screen due to medicine prescribed by a physician. *Id.*

Community corrections inmates do not have the liberty to come and go as they please. *See Hubbard v. State*, 849 N.E.2d 1165, 1168 (Ind. Ct. App. 2006), *trans. denied.* While *Woods* indicates that certain exigent circumstances might merit a less severe sanction than revocation, Mezick provided the following bases for fleeing:

> I had been out late and it was raining real bad. My son was real sick and wanting to see me. . . . Within a week later he got in a bad car accident and I was gonna go get the paperwork . . . that [son's mother] had never done.

(Tr. pp. 21-22). Accordingly, Mezick did not fail to return to work release by virtue of his own lack of volition. Moreover, Mezick presented no evidence to verify that his son's illness necessitated his immediate and unauthorized absence from work release. We also note that Mezick's attempt to impress upon our court a sense of urgency in his departure from work release out of concern over his son's accident is entirely futile as Mezick's son was not involved in the automobile accident until nine days *after* Mezick flew the coop.

In addition, relying on *Heaton v. State*, 984 N.E.2d 614, 618 (Ind. 2013), Mezick contends that "the selection of an appropriate sanction will depend upon the severity of the defendant's [work release] violation." (Appellant's Br. p. 9). To this end, Mezick argues that full revocation is inappropriate to punish a "first violation on work release." (Appellant's Br. p. 9). While this may have been Mezick's first violation of the work

8

release requirements, his prior desertion from the MHCP evidences Mezick's aversion to respecting the rules that would enable him to serve his sentence outside of prison. Furthermore, Mezick's argument that he is entitled to a lesser sanction for his *first* violation is feeble in light of the fact that his tenure in the work release program was a mere month.

Finally, referencing his clean urine screens and that he did not commit additional offenses while absent from work release, Mezick characterizes his failure to return to work release as only a "minor" or "technical" violation. (Appellant's Br. pp. 4-5, 9). We disagree. Failing to return to lawful detention constitutes an "escape" and is punishable as a Class D felony. I.C. § 35-44.1-3-4(c). *See Heaton*, 984 N.E.2d at 615, 618 (finding "technical" violations where defendant failed to obtain a substance abuse evaluation and did not apprise the probation department of her current address and employment). As with incarceration, community corrections is intended to penalize and rehabilitate convicted offenders. Thus, just as an offender's escape from confinement in the DOC would exceed a mere technical violation, an offender's failure to return to work release wholly frustrates the purpose of community corrections. We therefore find that Mezick was afforded the opportunity to present his argument of mitigating circumstances, and the trial court acted within its discretion in deciding that Mezick's violation merited revocation.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in revoking Mezick's participation in the work release program and ordering that he serve the balance of his sentence in the DOC.

Affirmed.

9

VAIDIK, C. J. and MAY, J. concur